CHARLES J. KOCH

*v.*

COMMONWEALTH INSURANCE COMPANY OF NEW YORK.

[Submitted January 15th, 1917. Determined January 26th, 1917.]

1. Reformation of a contract of insurance can be decreed, in the absence of fraud, only where a mutual mistake has been made in writing out the agreement of the parties; such reformation must be such as to make the instrument correspond with the agreement on which the minds of the parties have met.

2. Where a renewal policy is issued in the same terms as the one it renews, a mistake as to the uses to which the premises are put is not mutual, under circumstances stated.

3. The knowledge of an insurance broker as to such uses cannot be imputed to the insurer, under circumstances stated.

On final hearing on bill to reform a policy of fire insurance.

*Mr. Joseph B. Tyler,* for the complainant.

*Mr. Howard L. Miller,* for the defendant.

LEAMING, V. C.

The bill of complaint in this suit has been filed by complainant to reform a policy of fire insurance which was issued to him by defendant fire insurance company December 22d, 1915, for a period of five years.

In the policy the insured building is accurately described except in that the words "occupied as a store and dwelling" form a part of the description.

When the insurance was written the building was not in fact occupied as a store and dwelling but was occupied as a printing establishment. The bill seeks a reformation of the policy by causing it to set forth that the building was occupied as a printing establishment instead of as a store and dwelling. Complainant also tenders the additional amount of premium that would have been charged by defendant company had it been known by that company that the building was occupied as a printing office and not as a store and dwelling. The proofs adequately disclose that at the time the policy was issued no person in any way connected with or interested in the transaction knew that the building had been inaccurately described in the policy.

The circumstances which occasioned the error in description were as follows:

Five years prior to the issuance of the policy which it is now sought to reform a policy was issued by defendant company to complainant on the same building and for the same amount, which policy contained a description of the building identical

with that contained in the present policy. At that time the insured property was occupied as a store and dwelling and the description contained in the policy was accordingly accurate. That policy, however, was issued to be used as collateral security for a building and loan association, as mortgagee, and was delivered to the mortgagee and was probably at no time in the possession of or read by complainant. Complainant was accordingly unacquainted with the fact that the policy described the use to which the building was devoted.

About six months later complainant installed the printing plant in the building, which is now the occasion of this litigation. Complainant was comparatively unfamiliar with insurance matters and apparently did not know that the installation of the printing plant in the building was operative to increase the hazard or to affect his then existing insurance in any way; accordingly, no notice had been given by complainant to the insurance company of the change in the use of the insured building.

In the meantime, and before the expiration of the old policy, the local agent of defendant company who had issued the old policy was succeeded in business by a new agent who took over the business of the old agent. A few days before the old policy expired, the new agent of defendant company observed from the records, which had been acquired from the prior agent, that the policy was soon to expire, and determined that he would endeavor to secure in behalf of his company a new policy on the building when the old policy should expire. Noting that the policy was held by a building and loan association, as mortgagee, in which association a certain insurance broker of his acquaintance was an active member, the agent of defendant company telephoned to the insurance broker that the old policy on the building of complainant was about to expire and asked the broker to endeavor to secure a new policy for him. The insurance broker accordingly saw complainant—the owner of the building—and explained to him that his old policy was about expiring and asked him to take out a new policy in the same company at its expiration. Upon complainant's inquiring of the broker what it would cost, the broker telephoned to the agent of defendant company and inquired the amount of the premium and received

a reply stating the amount the premium would be. That amount was the same amount that had been paid for the old policy, and it is obvious from the evidence that the amount was communicated by the insurance agent to the broker without any knowledge upon the part of the insurance agent that there had been any change in the use to which the building was devoted. The broker then apprised complainant of the amount of the premium and complainant authorized the issuance of the new policy at the expiration of the old one. The policy was accordingly issued by the agent of defendant company on the date above named and was obviously copied from the old policy.

The proofs adequately disclose that at the time this latter policy was issued, and at the time the loss under it occurred, neither complainant nor the building and loan association who held the policy as collateral knew that the property was described in the policy as occupied as a store and dwelling. The new policy was sent by the agent to the broker and by him delivered to the mortgagee and was at no time in the possession of complainant or seen by him.

The evidence has also clearly established the fact that the existence of an error in description was unknown to any person who was in any way connected with or interested in the transaction and was wholly unintentional upon the part of all parties concerned, and that the error was not discovered by anyone until after the loss had occurred by fire, and that this bill for reformation was then promptly filed by complainant.

The agent of defendant company who issued the policy here in question, and at whose request the insurance broker already referred to solicited the policy, was a general agent of defendant company in the sense of an agent who was clothed with power within a limited territory to assume risks and execute policies by his countersignature.

There can be no doubt touching the fundamental doctrine that a reformation of a contract of insurance or other written contract can only be decreed, in the absence of fraud on the part of defendant, where the minds of the parties have met contractually and a mistake mutual to the contracting parties has been made in writing out the contract so as to make the parties appear to

have entered into a contract which they have not entered into; and the reformation must be such as to make the written contract correspond with that upon which the minds of the contracting parties have met. *Ordway* v. *Chase, 57 N. J. Eq. 478.*

In the present case, it was the mutual intention and purpose of all parties connected with the transaction that any description of the insured property which might be contained in the policy of insurance should be accurate, and it was their mutual belief that the written policy, which was intended to faithfully express their mutual purpose, was in all things accurate.

It cannot be said that any specific formula of description entered the mind of complainant at any time, for he wholly relied upon those who should prepare the policy to prepare it correctly in all respects; but his real contract, as intended by him, was not for that reason any less a contract for insurance on his printing establishment.

It is, however, obvious, even in these circumstances, that unless defendant company can be said to be chargeable with knowledge of the fact that the insured property was used as a printing establishment no reformation can be decreed, because in such case the general intent on the part of the insurer that the property should be accurately described could not be properly said to include the specific intent to insure a printing establishment; but with knowledge of the use to which the insured property was devoted imputed to the insurer the authorities appear to be consistent with the view that the policy could be reformed and made to describe the insured property correctly.

This view appears to have been recognized in *Franklin Fire Insurance Co.* v. *Martin, 40 N. J. Law 568.* At *p. 574* of the report of that case it is said: "If the proposal for insurance be prepared by the agent of the company, and he misdescribes the premises, with full knowledge of their actual condition, and there be no fraud or collusion between the agent and the insured, the contract of insurance may be reformed in equity, and made to conform to the condition of the premises as they were known to the agent." The authorities there collected are to the effect stated (the citation of *L. R. 19 Eq.* should be at *p. 485*, and the citation of *45 Conn.* should be *25 Conn.*), and *Hill* v. *Millville Insurance Co.,*

*39 N. J. Eq. 66,* decided in this court, appears to be based on a similar view. See, also, *Dewees* v. *Manhattan Insurance Co., 35 N. J. Law 366* (at *p. 371*).

The agent of defendant company who issued the policy here involved did not have actual knowledge that the insured property was used as a printing office. But, as already stated, the insurance broker, who was procured by the agent of defendant company to secure this insurance for him, did in fact know that the lower floor of the insured building was used as a printing establishment. No written proposal or application for insurance was signed or made by complainant; he merely assented to the request of the broker for insurance and wholly relied upon the insurance company, or those representing it, in all things. He wanted his printing establishment insured, and the broker knew that it was, in part, at least, a printing establishment that was to be insured. If the knowledge of that broker is to be imputed to defendant company, it would seem that reformation of the policy must be decreed, for in such case the mistake must be deemed a mistake of the insurer resulting in a written policy which expresses material matters which the insurer could not be said to have properly intended to express.

But I find myself unable to reach the conclusion that the knowledge of the broker that a printing plant was in the insured building can be imputed to defendant company in such manner as to afford a sound basis for a decree of reformation. It has already been suggested that if the general agent of the insurer, clothed by the insurer with powers to determine the terms of and to issue the policy for the insurer by his countersignature, had in fact known that the building was in use as a printing establishment, authorities appear to support the view that it could be appropriately said that the minds of the necessary parties met on a contract to insure a printing establishment, and that the error of description in such case would be either a mistake or act of fraud on the part of the agent of the insurer while acting for the insurer in a matter within the scope of the agent's authority to act. But although the remedy of reformation appears to have been at times awarded in such circumstances, it must be conceded that some difficulty is encountered even in such

cases in reaching a wholly satisfactory conclusion that the insurer can be said to have in fact made or to have intended to make a contract other or different from the one written, or that rescission rather than reformation may not in such circumstances be the appropriate and only remedy.

But, in the present case, the court is asked to go further and charge the insurer with the knowledge of the insurance broker touching the use of the insured building, and by reason of that undisclosed knowledge of the broker formulate a contract upon the part of the insured embodying matter that was within the knowledge of neither the insurer nor the general agent of the insurer, the latter of whom represented the insurer in all matters of contractual negotiation and engagement. I do not entertain the view that this broker can be said to have been, as insurance brokers sometimes are, the agent of complainant; the broker was selected and requested by the agent of the insurer to induce complainant to renew his insurance which was then about to expire; pursuant to that request the broker solicited the policy in behalf of the agent of the insurer and received from that agent for his service the customary proportion of the agent's commissions. It thus appears that to whatever extent the broker was an agent of anyone in this transaction he was the agent of the agent of the insurer, and as such it may be that he can be said to have been an agent of the insurer, although the evidence does not disclose whether the agent of the insurer was empowered to employ or engage the services of soliciting agents. But it is apparent that any agency of this broker was within extremely narrow lines, and his participation in the transaction was in fact within equally narrow lines. He was merely asked by the insurer's agent to induce complainant to take out a new policy at the expiration of his old one; the broker did that, as requested, and nothing more. When he was asked by complainant the amount of the premium he telephoned to the insurer's agent in the presence of complainant and asked the amount and at once received a reply over the telephone and stated that amount to complainant. Complainant then consented to take a new policy and that consent was telephoned to the insurer's agent and the policy was then prepared by the insurer's agent and sent to the broker and by the

broker delivered to complainant's mortgagee. The broker was neither expressly nor impliedly requested to make a survey or examination of the premises or in any way to supply information touching the property, or to utilize his own information touching the property, and he did not do so. He did exactly what he was asked to do, and no more, and he was asked to do no more than secure complainant's consent to renew his insurance when the then current insurance expired. In this specific and limited employment I find no justification for the conclusion that the broker became an agent of the insurer in such manner that knowledge which the broker may have fortuitously possessed concerning the use of the insured building and which was not acquired by him through, by reason of or under his employment became the knowledge of the insurer or the knowledge of the agent of the insurer who issued the policy in behalf of the insurer. Whatever powers or duties were imposed upon this broker by the agent of the insurer would necessarily carry with them the implied power or duty to do whatever might be reasonably necessary to discharge those powers or duties; but no power or duty to obtain or utilize or supply information touching the insured property was either expressly or impliedly conferred by the broker's appointment for the purpose already stated. It appears to me that any conclusion to the contrary of that here stated would be utterly subversive of the established principles controlling agencies.

There are authorities to be found in which it is held that when a soliciting agent has been appointed by an insurance company and supplied by the company with blank applications for insurance, and such an application for insurance has been filled in by the soliciting agent at the request of and in behalf of the insured and by mistake of the agent contains matter different from that which the insured has correctly stated to the agent, the insurer will be charged with knowledge of the matter actually supplied by the insured to the soliciting agent, and that the policy, issued in conformity to such written application, may be reformed at the instance of the insured; and in *Mohr & Mohr Distilling Co.* v. *Ohio Insurance Co., 13 Fed. Rep. 74,* it was said at *nisi prius* that an insurance company could be chargeable with

knowledge of a broker who is acting at the instance of an agent of the company in soliciting insurance. These cases must be understood to refer to certain soliciting agents with broader powers and duties than those conferred upon the broker in the present case, for if relief is to extend beyond the field of rescission and recovery of the premium paid, the basis for relief must be the fact that the minds of the contracting parties met contractually on the specific matter touching which reformation is sought, and not, like rescission, in which the ground of relief may be that there was no meeting of minds. Many cases may be found in support of the view herein expressed. The reasoning of Mr. Justice Hoke to that effect, in *Floars* v. *Aetna Life Insurance Co., 144 N. C. 232,* appears to me to be unassailable.

The primary cause for complainant's building being insured as a building occupied as a store and residence was the neglect of complainant to notify the insurer of the installation of the printing plant in the building during the period of the life of the old policy; by reason of that neglect the present policy was issued at the expiration of the old policy to insure the same building, similarly used, against loss by fire. The policy which was issued was exactly as the insurer intended to issue it. On no sound theory can it be said that the defendant company ever contracted to insure complainant's building while in use as a printing establishment. There was not only the absence of an intent upon the part of the company to insure a printing office, but there was an honest and defined and fixed affirmative intent and purpose upon the part of that company to insure the building as a store and residence; that was the risk which the insurer designed to assume, and for that risk the insurer accepted the premium suitable for that risk, a premium in amount greatly less than the premium fixed for risks of the other nature. There was accordingly at no time a mutual intent of the contracting parties to insure a printing office.

I am obliged to advise a decree dismissing the bill.