JOSEPH GIAMMARES and TONY CAFFARO, respondents,

*v.*

ALLEMANNIA FIRE INSURANCE COMPANY et al., appellants.

[Argued June 18th, 1919.   Decided November 17th, 1919.]

1. A written contract will not be reformed in equity because of a mistake, in the absence of fraud, unless it is mutual, that is common to both parties, and each under the same mistake as to its terms.

2. To reform a writing to meet the alleged intent of one party who avers a mistake, when it accurately expressed the agreement as understood by the other, would be as far from expressing the agreement as before, and injure one party at the cost of precisely an equal wrong to the other, and therefore to warrant a reformation for mistake the demonstration of the mistake must be clear and satisfactory, such as produces a strong conviction of the truth.

On appeal from a decree in chancery advised by Vice-Chancellor Lane, and reported in *89 N. J. Eq. 460*.

*Mr. Freeman Woodbridge,* for the respondents.

*Mr. I. Benjamin Glueckfield,* for the appellants.

The opinion of the court was delivered by

BERGEN, J.

The bill of complaint in this cause prays the reformation of a policy of insurance, in aid of an action at law thereon, by the addition of certain agreements or stipulations not contained in the written contract, which it is charged were omitted through a mistake or neglect which was mutual, or fraudulently planned to deceive and mislead the complainants.  The vice-chancellor who heard the cause decided that the policy be reformed by noting thereon, as of the date of issue, that the property insured stood on leased ground; that it was subject to a chattel mort-

gage, and that a standard mortgagee clause be thereto attached with loss payable to the mortgagee, and also enjoined the defendant from setting up, in the action at law, the defence that the policy was issued without such notations thereon. From this the defendant has appealed. The undisputed facts are that on January 4th, 1917, the defendant issued and delivered to one Antonio Caffaro its policy insuring him against loss, or damage by fire for one year, except as therein provided, to an amount not exceeding $2,350, divided as follows: $1,500 on a store building, $200 on fixtures, and $650 on his stock of goods subject to conditions, *inter alia,* that the policy should be void if, unless otherwise agreed by endorsement thereon, the subject of the insurance be a building on ground not owned by the insured in fee-simple, or, if it be personal property, it be, or shall become, encumbered by chattel mortgage; that the building insured was on ground not owned by the insured, nor was there any endorsement on the policy of an agreement that the policy was issued with that condition known and accepted by the defendant; that February 21st, 1917, Caffaro sold the building and stock to Joseph Giammares, who, in part payment, gave him a chattel mortgage on the building and contents; that the policy was taken to the agent of defendant who endorsed on it "Ownership is now vested in Joseph Giammares as owner;" that the property was destroyed by fire about a month after the transfer, and, just before the year of limitation expired, a suit at law was brought by these complainants against the defendant, in which the latter pleaded as a defence that the policy was void, because the land was not owned by the insured, and also that the property was encumbered by a chattel mortgage. It is quite manifest that without a reformation of the policy such a defence would be good at law, but the decree absolutely destroys that defence. It is quite immaterial whether there was or not a mutual mistake in the issuing of the original policy for that came to an end when the property was transferred to Giammares, and the defendant was no longer bound unless it entered into a new contract with the subsequent purchaser, which it was not bound to do. The assignment of an insurance policy, and

the assent of the company thereto, constitute an independent contract with the assignee the same as if the policy had been reissued to him upon the terms and conditions therein expressed. *14 R. C. L. p. 1007 § 185.* And that is manifestly so in a case like the present where it is claimed a different contract was made which included the protection of a chattel mortgage not in existence when the original policy was issued. What complainants claim is, that defendant agreed to make the policy good to one who was not an owner of the land, as well as to a chattel mortgagee, and to indemnify them in case of loss by fire. This could not be done by the plain terms of the policy without a notation thereon to that effect. It may be proper to mention that in this case the decree requires the defendant to attach to the policy a standard mortgagee clause, which is quite a different engagement from one agreeing to pay a loss to a mortgagee. The first binds the company regardless of any defence it may have against certain acts of the insured, and the latter only to first pay, out of the loss, if any, the mortgagee's debt. The prayer of the bill is limited to the latter, nor is there any proof by complainant that the defendant was to execute and attach to the policy a standard mortgagee clause, and it was error to so decree. But the real question presented is whether the proof justifies a reformation of this written agreement upon the ground of mutual mistake. There is no proof in this case of any fraud which would be a basis for equitable interference, unless a disagreement of the parties as to the proposed contract is such a basis without convincing proof that the bargain was not correctly and truly expressed, which it is not. The right to have reformation prayed for depends upon an agreement, part of which it is alleged was omitted when reduced to writing, because of a mutual mistake which both admit, or the evidence shows they ought to admit, and it rests, in the last analysis, upon what the agreement was, and if it be claimed to be different from the writing, the proof ought to be clear and convincing that it was as claimed, but erroneously expressed in the written agreement, through some mutual misunderstanding, or mistake in neglecting to use proper words to express the contract really

made. Speaking of the power of the court of equity to reform contractual writings, Vice-Chancellor Van Fleet, in *Cummins* v. *Bulgin, 37 N. J. Eq. 476,* correctly stated the rule as follows: "To warrant its exercise, however, the proof in demonstration of mistake must be clear and satisfactory. Such as produces a strong conviction of its truth. That which is written will not be changed by loose, doubtful, or equivocal evidence." No question of rescission, upon the ground of a unilateral mistake, arises in this case for the complainants do not wish a rescission of the contract for without it they could not maintain their action at law. All they pray for is a reformation upon the ground of mutual mistake, which they allege amounted to a fraud, but there is no proof to sustain the claim of fraud. In *Green* v. *Stone, 54 N. J. Eq. 387,* Mr. Justice Depue, speaking for this court said, "The doctrine that a contract or deed will not be reformed for mistake, in the absence of fraud or imposition, unless the mistake was mutual, that is, reciprocal and common to both parties, where each alike was under the same misconception as to the terms of the written instrument, is the settled doctrine of courts of equity," and he cites with approval *Cummins* v. *Bulgin, supra,* and also from the opinion of Chief-Justice Ames, in *Diman* v. *Providence R. R. Co., 5 R. I. 130,* a paraphrase of which is that, to reform a writing to make it accord with the alleged intent of one party who avers a mistake, when it accurately expresses the agreement as understood by the other, would be just as far from expressing the agreement as before, and injure one party at the cost of precisely an equal wrong to the other. With these well settled principles to apply to the case under review, all that remains for us to decide is whether the complainants have shown by their proofs such a situation as justifies the reformation which the vice-chancellor advised. The complainants proved that after the transfer and the giving of the chattel mortgage, their broker took the chattel mortgage, the bill of sale of the personal property, and policy of insurance to the office of defendant's agent and found there the agent's stenographer, and notified her that the title of the new owner, Giammares, to the land on which the building stood,

was merely a leasehold interest; that Caffaro, the vendor, had taken a chattel mortgage on the building and stock in part payment; had assigned the policy to the new owner, and desired the defendant company to note its assent thereon, and make the policy read that any loss should be payable to Caffaro as mortgagee by a notation on the policy, and that to this the stenographer made no reply; that subsequently the policy was mailed to the broker who delivered it to Caffaro; that neither read the policy or examined it to see that the notations were made until long after the fire, when it was discovered that the only notation made was that hereinabove set out, which assented only to change of ownership. There is grave doubt as to the truth of this testimony, for Mr. Burton, an attorney-at-law, testified that he sent the policy by mail to the agent, he having drawn the bill of sale and chattel mortgage. He also testified that the policy was returned to him with the endorsement as to ownership only. But if the broker did all he testifies to, he expressly states that the stenographer did not make any reply, or agree to comply with his request, and aside from any want of authority of the stenographer to bargain for the company, she did not expressly enter into any such agreement. All she did was to note on the policy an assent to the transfer of ownership. The stenographer testified that complainant's broker did not bring the policy to her, but that it came to the office through Mr. Burton; that she made the endorsement and returned it to Mr. Burton; that she did not know of the chattel mortgage, and her instructions were not to issue any policy on property subject to a chattel mortgage, and would not have done it if asked to do so. There does not seem to be any proof, of the character required, of any agreement except that expressed in the notation signed by the agent and attached to the policy. There was proof by the complainants that their broker asked for more, but none that it was agreed to, and certainly a court of equity will not make a contract for parties by inserting in a written agreement, terms of which there is no proof that the contracting parties agreed to. The notation attached to the policy was brief and explicit, it was taken by complainants and held until after the destruction

of the property by fire without protest, and they knew the policy was void unless the changed condition of the property was noted on the policy. The notation attached could be read at a glance and plainly disclosed that it did not contain what is now urged was omitted by a mutual mistake. A perusal of the short rider attached to the policy would have disclosed the alleged error. In disposing of this case we have assumed the authority of the stenographer to bind the company and its agent, but that is not to be taken as a determination of that question, for that we do not decide. Here we have a written contract which we are asked to reform according to the understanding of one party, against the evidence of the other that no such agreement as the complainant avers was ever made. In other words, we are to make a contract for the parties without convincing proof of an agreement made but omitted from the writing by mutual mistake. We do not think that the evidence in this record shows a mutual reciprocal mistake "common to both parties, when each alike was under the same misconception as to the terms of the written instrument," according to the rule in *Green* v. *Stone*, *supra*. "Courts of equity do not grant the high remedy of reformation upon a probability; nor even upon the mere preponderance of evidence, but only upon a certainty of error." *Pom. Eq. Jur.* § 859, cited in *Hupsch* v. *Resch, 45 N. J. Eq. 657; affirmed, 46 N. J. Eq. 609,* on the opinion of Vice-Chancellor Pitney in which he said, "that he who asks to have a written instrument reformed must make out a perfectly clear case, free from doubt." The complainants, having failed to make out a perfectly clear case, free from doubt, the decree in their favor will be reversed and the bill of complaint dismissed.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Swayze, Trenchard, Bergen, Minturn, Kalisch, Black, White, Williams, Taylor, Gardner, Ackerson—12.