ANTHONY PARRETTE, complainant-appellant,

*v.*

CITIZENS' CASUALTY COMPANY OF NEW YORK, a corporation,
defendant-respondent.

[Submitted May term, 1940. Decided October 10th, 1940.]

*Messrs. Edwards, Smith & Dawson (Mr. Raymond Daw-son,* of counsel), for the appellant.

*McCarter, English & Egner (Mr. Sidney R. Pine* and *Augustus C. Studer, Jr.,* of counsel), for the respondent.

The opinion of the court was delivered by

PERSKIE, J.

The single question requiring decision in this cause is whether a unilateral or a mutual mistake was committed in the writing of the insurance policy covering complainant's taxicabs.

The facts which give rise to the stated question are free from substantial dispute.

Anthony Parrette, appellant here and complainant below, who sought reformation of the policy in question, was engaged in the taxicab business in Plainfield, New Jersey. He owned three Packard cars, hereafter referred to as cars A, B and C, which he used as taxicabs. Pursuant to the compulsory insurance requirements (*R. S. 48:16-1 et seq.*) he had insured these cabs with the Eureka Casualty Company. Complainant also owned another Packard car, hereafter referred to as car D, which he used for livery purposes and which he had insured with the Phoenix Indemnity Company. Later, he sold car A and substituted car D in lieu thereof for use as a taxicab. This substitution was properly endorsed on the Eureka policy. The Eureka Company announced its termination of the taxicab insurance business. For the purpose of ascertaining whether the Citizens' Casualty Company of New York, defendant below and respondent here, would under the circumstances, insure complainant, complainant's broker, F. A. Martin Company, communicated with L. Lloyd Koch, resident vice-president of the defendant company in charge of underwriting in this area. As a result of these communications, it is altogether clear that Koch "knew" complainant, and knew that he operated "three taxicabs." While Koch told Martin that he might want to make an investigation before issuing the policy, he neither made such investigation nor examined the cars. It is equally clear that defendant agreed to issue and did issue the policy because Koch thought complainant was a "good risk."

It, however, appears, without contradiction, that in copying the motor and serial numbers of the three taxicabs from the Eureka policy the treasurer of the F. A. Martin Company mistakenly set down the serial and motor number of car A. She overlooked the endorsement which had substituted car D for car A. Defendant issued the policy so mistakenly drawn, and delivered it to F. A. Martin Company which in turn delivered it to complainant.

When complainant delivered the policy to the city clerk on June 1st, 1938, in pursuance of *R. S. 48:16-6,* the mistake was discovered and complainant promptly notified his broker. The latter corrected the policy and returned it to complainant

who thereupon filed it with the city clerk. There was some testimony concerning a letter immediately written (June 1st, 1938) by complainant's broker to defendant calling its attention to the mistake and requesting an endorsement to cover car D. Defendant denied receipt of such a letter. On June 23d, 1938, the treasurer of the F. A. Martin Company spoke to Koch and also wrote to him about the matter, enclosing a copy of her letter to defendant under date of June 1st, 1938. On June 28th, 1938, defendant issued an endorsement covering car D but effective, by its terms, as of that day only.

In the meantime, June 7th, 1938, car D became involved in a collision with a bicycle ridden by one Aladar Brooks. On June 29th, 1938, Brooks caused suit to be instituted against complainant in the Union County Court of Common Pleas to recover the damages he allegedly sustained as a result of that collision. Defendant refused to defend the suit.

On July 21st, 1938, complainant caused the bill in the instant suit to be filed. By his bill, complainant sought reformation of the policy which the defendant issued to him as aforesaid so as to include coverage of car D. Additionally, complainant sought a declaration of his rights in the policy "in accordance with the Uniform Declaratory Judgment act," *R. S. 2:26-68 et seq.,* and he also sought an injunction against the further prosecution of the law suit by Aladar Brooks, which finally resulted in a verdict in favor of Brooks in the sum of $5,500.

The learned vice-chancellor concluded that the complainant was not entitled to have the policy reformed and advised a decree which was entered dismissing the bill. The grounds upon which that decree was entered were that F. A. Martin Company, acting as broker, "was the agent of the insured, Parrette, and not the agent of defendant company;" that the broker had no authority to correct the policy "* * * and in so doing performed an unauthorized act;" and that "the evidence established the existence of a mistake solely and peculiarly on complainant's part through his insurance broker * * * a unilateral and not a mutual mistake * * *." *Parrette* v. *Citizens' Casualty Company of New York, 126 N. J. Eq. 327; 8 Atl. Rep. (2d) 828.* The propriety of that decree is challenged.

The applicable principles concerning the right of reformation are well settled. A unilateral mistake, in the absence of fraud or imposition (neither is here claimed), is no ground for reformation. *Giammares* v. *Allemannia Fire Insurance Co., 91 N. J. Eq. 114; 108 Atl. Rep. 237.*

A mutual mistake is ground for reformation when, as here, the minds of the parties have met contractually but because of a mutual mistake the written contract between the parties is wanting in expression or execution to evince the actual and binding contractual intent of the parties. *Koch* v. *Commonwealth Insurance Company of New York, 87 N. J. Eq. 90, 93, 94; 99 Atl. Rep. 920; affirmed, 88 N. J. Eq. 344; 102 Atl. Rep. 1053; Gross* v. *Yeskel, 100 N. J. Eq. 293; 134 Atl. Rep. 737. Cf. Restatement of Law, Contracts 968 § 504.*

In light of these principles we proceed further to analyze the proofs to the end of ascertaining (1) the actual and binding contractual intent of the parties and (2) whether the policy expresses that intent.

Obviously, complainant intended to get coverage for the three cars he was actually using as taxicabs. He could not otherwise have so used the cars. Defendant, on the other hand, as we have already seen, knew complainant, knew that he operated three cars and knew that he was obliged to cover them with insurance. That was the type of policy which the Eureka Company had issued and that was the type of policy which defendant intended to issue. That defendant so intended to insure complainant, irrespective of the motor and serial numbers of his three taxicabs is, in addition to all that has already been written, most persuasively illustrated by the colloquy between the vice-chancellor and Koch. "By the vice-chancellor: *Q.* You told him [Martin] that you would insure the cars? *A.* Yes—no; we told him we *would insure Parrette* and to send the motor and serial numbers for us to indicate on the policy." (Italics ours.) In other words, complainant intended to obtain from defendant and defendant intended to issue to complainant the required statutory policy making effective complainant's right to operate his three taxicabs. *R. S. 48:16-3.* That is clear. It is equally clear that the policy in issue does not express that clear contractual and binding intent of both parties.

The type of policy here involved is clearly distinguishable from the usual type of policy covering loss by fire or theft, the risk and premium for which are based on the value and location of the property insured. The motor and serial numbers were requested and inserted in the policy in issue as added information further to identify complainant's ownership. Both parties intended that the policy should, as required by law, cover complainant's ownership and operation of his three taxicabs. By mutual mistake of both parties that intent was not expressed in the policy. Complainant was, therefore, entitled to have the policy reformed. *Cf. Dein-Bacher, Inc., v. U. S. Fidelity, &c., Co., 115 N. J. Eq. 205; 169 Atl. Rep. 829.*

The decree is reversed, with costs.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, DEAR, WELLS, WOLFS-KEIL, RAFFERTY, HAGUE, JJ. 13.