54 N.J. Super. 37 (1959)
148 A.2d 37
JENNIE SMITH, SARRAK SMITH AND FRANK SMITH, ETC., PLAINTIFFS,
v.
MOTOR CLUB OF AMERICA INSURANCE COMPANY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided January 28, 1959.
*38 Messrs. Marcus & Levy (Mr. Harry C. Chashin, appearing), attorneys for plaintiffs.
Messrs. Harkavy and Lieb (Mr. Jerome S. Lieb, appearing), attorneys for defendant.
SCHERER, J.S.C.
Plaintiffs Sarrak Smith and Frank Smith filed a complaint against the defendants Motor Club of America Insurance Company (hereinafter called "Motor Club") and Jennie Smith on January 3, 1958. The defendant *39 Jennie Smith was, on February 11, 1955, an insured of Atlantic Casualty Company, the predecessor of defendant Motor Club. Plaintiff Frank Smith, husband of Sarrak Smith, sued for medical expenses paid or incurred on her behalf. The complaint, in its caption, states that the suit is brought not only on behalf of the plaintiffs but also "in the right of all other persons who have been or are entitled to coverage under the medical payments clause of automobile liability policies issued by the defendant, Motor Club of America Insurance Company, and who are similarly situated." The plaintiffs alleged that they were entitled to reimbursement for medical expenses incurred when Sarrak Smith was injured on February 11, 1955, while a passenger in a car owned by the defendant Jennie Smith, and being operated by the latter's husband William Smith. The collision occurred apparently without any negligence on the part of the operator of the car of Jennie Smith.
Sarrak Smith and her husband instituted suit in the Law Division of this court, Passaic County, against Jennie and William Smith and Michael Czaban, the owner and operator of the other vehicle involved in the accident. A settlement of that suit was effected and the defendant Czaban paid to Sarrak Smith and her husband the sum of $8,000. No payment was made by the Motor Club as the insurance carrier of Jennie Smith. It is conceded that defendant Motor Club declined to make any payment solely as liability carrier. A general release, dated August 30, 1957, was given to Czaban by Sarrak and Frank Smith.
The policy which the Motor Club had issued to Jennie Smith provided, under coverage "C," that the company would pay all reasonable expenses incurred within one year of the date of the accident to each person sustaining bodily injury while in the insured's vehicle. The coverage limit was $2,000, as shown by a supplemental document submitted with the policy. The policy, in paragraph 17, under the heading "Conditions," states that upon payment of a medical expense claim under coverage "C" and other coverages the company is entitled to subrogation of all rights of the insured, *40 or any other person to whom payment is made under such coverage.
It is admitted that in the suit in which the plaintiffs received the $8,000 part of the damages claimed was for medical expenses of Sarrak Smith and for the husband's claim for such expenses and per quod. It is also admitted that the Motor Club "offered to pay the whole of said medical expenses on condition plaintiff Sarrak Smith would execute and deliver a subrogation receipt, and alternatively offered to pay in full settlement of its obligations, both as liability carrier and under the medical payments provisions of said policy, but without subrogation, the sum of $300.00, which offers were rejected by plaintiffs."
In the original complaint in this cause the plaintiffs sought recovery of $1,000 for medical expenses, based on the claim that, although plaintiffs' medical expenses due to the accident were in excess of that sum, $1,000 was attributable to the first year after the accident and therefore payable under coverage "C." The plaintiffs also sought a judgment: (a) reforming the policy so as to eliminate the subrogation clause; (b) declaring the subrogation clause to be illegal, void, against public policy and of no effect; (c) enjoining the defendant from using the clause in any policies until proper steps have been taken to protect the public interest; and (d) requiring the Motor Club to account for premiums paid for such coverage by policy holders upon the theory of unjust enrichment.
A motion was made by the Motor Club to strike the complaint as insufficient in law, for failure to set forth a claim upon which relief could be granted; for failure of the plaintiffs to bring the action in connection with their suit at law for damages arising out of the accident; and on the ground that the claim was barred by laches. Judge Gaulkin granted the motion to strike the complaint, but also granted the plaintiffs leave to amend.
An amended complaint was filed in which the Motor Club's insured, Jennie Smith (previously a defendant), became a coplaintiff with Sarrak Smith and her husband. Plaintiffs *41 apparently decided this course was necessary in order to properly assert a claim for reformation and for all of the other relief sought, except the recovery of the $1,000, since Jennie Smith was the holder of the contract of insurance. It is worthy of note that the husband of Sarrak Smith and the husband of Jennie Smith are brothers.
In the amended complaint Jennie Smith alleges that she did not know about the presence of paragraph 17 in connection with coverage "C," and that if she had known she would not have purchased the policy in question. It is also alleged that other companies issuing policies of this sort do not include in them provisions for subrogation and that the defendant fraudulently concealed this provision from the general public and, in particular, from Jennie Smith. The same demands for relief as were contained in the original complaint are made in the amended complaint. The cause of action in this amended complaint is set forth in three separate counts, whereas the original complaint contained but one.
The defendant Motor Club moves for summary judgment upon the grounds that the amended complaint fails to state a claim upon which relief can be granted and that there is no genuine issue of any material fact and defendant is entitled to judgment as a matter of law.
There is no dispute as to any material fact. Jennie Smith and her husband had insurance with the predecessor of the Motor Club for many years prior to the accident. They claim that they first knew about the subrogation clause when it was brought to their attention by counsel for Sarrak and Frank Smith, about February 1958, after the settlement of the other litigation and after the institution of the present suit on January 3, 1958.
Plaintiffs, at the argument of the motion, sought to inject a new issue into the case by requesting a further amendment to the complaint to allege that the $8,000 received in the settlement of the accident case "was not in full compensation for their injuries and expenses."
*42 This would seem to be an attempt to create an issue of fact under the decisions in Breen v. Peck, 28 N.J. 351 (1958), affirming 48 N.J. Super. 160 (App. Div. 1957), and Daily v. Somberg, 28 N.J. 372 (1958). In these cases it is stated that the just and true rule should be that, although a plaintiff who has received full satisfaction should be barred, a plaintiff who has received only part of his damages from one wrongdoer should not be barred from proceeding against the other wrongdoer who caused his damages.
But the above suits involved joint tortfeasors and were not suits on contract, as here. The joint tortfeasors in the claim of Sarrak and Frank Smith were Jennie and William Smith and Michael Czaban. The plaintiffs' present action against the defendant is on contract, not tort, and the rules stated in the Breen and Daily cases do not apply here.
Whether or not plaintiffs received full payment in the tort action is unimportant. The defendant does not rely upon the general release therein given as its defense. Its position is that under the policy provisions it is entitled to be subrogated when it pays the plaintiffs. It has offered to carry out its obligations under the contract, but plaintiffs have refused to accept.
No evidence was offered by plaintiffs to support their claim that Motor Club is the only company issuing policies of this sort containing a requirement for subrogation. But if the provision of the policy is not against public policy, the fact that other companies, for reasons of their own, do not include it in their policies is irrelevant.
As revealed by the moving papers, counsel for the plaintiffs, as far back as 1952, complained to the Commissioner of Banking and Insurance of New Jersey about these medical payment clauses in policies issued by the defendant's predecessor, Atlantic Casualty Company, stating that to permit a subrogation provision of this sort was improper and giving reasons for their contentions. They requested the Commissioner to look into the matter and decide whether such was *43 a legitimate device and in the public interest. Apparently the Commissioner requested the views of the insurance company, and its vice-president wrote to the Commissioner setting forth the company's position on the subject and the reasons why it believed the clause to be a proper one. The Commissioner presumably was satisfied with the explanation because no action was taken by him, or any of his successors in office, to compel any material change in the form of the policies, and the clause in question is still contained therein in essentially the same form.
N.J.S.A. 17:28-1 provides that the Commissioner may order the discontinuance of any provision of a policy of automobile liability insurance "which he finds to be unjust, unfair, inequitable, misleading or contrary to law." While this provision was inserted in 1956, after the date of the issuance of the policy in question, the statute did no more than formalize the power which the Commissioner always had to control the contracts of companies licensed and supervised by him. See, for example, N.J.S.A. 17:28-5, 6, 7, which became effective in 1939.
Originally, the supervision of the affairs of insurance companies was the responsibility of the Secretary of State. The office of Commissioner of Banking and Insurance was established in 1891. The power of the Commissioner to approve or reject provisions in insurance policies was held to be an administrative, not a judicial, one and therefore properly vested in him. Iowa Life Ins. Co. v. East. Mut. Life Ins. Co., 64 N.J.L. 340 (E. & A. 1900).
Under N.J.S.A. 17:23-4, the Commissioner has power to examine any insurance company authorized to transact business in this State as to its method of doing business and all of its other affairs.
It requires no citation of authority for the well-settled proposition that public policy is declared by the Legislature and that it is not the province of the court to declare it, but to follow it. The Legislature, having vested the Commissioner of Banking and Insurance with authority to strike from policies any clauses he deems to be unfair *44 or inequitable, and the Commissioner having taken no such action with respect to the clause in question, it must be presumed that he did not consider it unfair or inequitable and that it is not against public policy.
Thus, demand for judgment on this point must be denied. This necessitates the denial of the other claims for relief dependent upon it, i.e., accounting for unjust enrichment in the collection of premiums for the medical reimbursement coverage and for injunction against the use of the subrogation clause by the defendant.
The right of the defendant Motor Club to secure subrogation when it makes payment under a policy of this kind finds support in George M. Brewster & Son v. Catalytic Constr. Co., 17 N.J. 20 (1954); United States Casualty Co. v. Hercules Powder Co., 4 N.J. 157 (1950). See also, Michigan Hospital Service v. Sharpe, 339 Mich. 357, 63 N.W.2d 638, 43 A.L.R.2d 1167 et seq.
This leaves the question of reformation to be disposed of. As part of the proof on its motion for summary judgment, defendant offered the depositions of Jennie and William Smith, taken April 15, 1958. In my opinion the plaintiff Jennie Smith is not entitled as a matter of law to have the policy reformed to eliminate the subrogation provision. The rule concerning reformation is clearly set forth in Toth v. Vazquez, 8 N.J. Super. 289 (App. Div. 1950), where the court said, at page 293:
"Regarding the equitable remedy of reformation, it was held in Santamaria v. Shell Eastern Petroleum Products, Inc., 116 N.J. Eq. 26, at p. 29 (Ch. 1934), that: `Reformation is the means by which the instrument is made to conform to the intention of the parties. It is applicable to cases of mistake and fraud. If there is mistake on one side and fraud on the other, reformation is the remedy. Mistake exists when a person, under some erroneous conviction of law or fact, does, or omits to do, some act which but for the erroneous conviction he would not have done or omitted. Cummins v. Bulgin, 37 N.J. Eq. 476. It may arise either from unconsciousness, ignorance, forgetfulness, imposition or misplaced confidence. Where it arises from imposition or misplaced confidence, relief may be had on the ground of fraud. Where it arises from unconsciousness, ignorance or forgetfulness, no fraud exists and redress must be on the basis of mistake. The mistake must be one that is mutual, *45 material and not induced by negligence. Swedesboro Loan and Building Association v. Gans, 65 N.J. Eq. 132; Paulison v. Van Iderstine, 28 N.J. Eq. 306.' And further at page 32, of 116 N.J. Eq.:
`Reformation will not be granted unless there is clear error. Vice-Chancellor Grey in Anderson v. Anderson Food Co., 66 N.J. Eq. 209, said: "Courts of equity do not grant the high remedy of reformation upon a probability, or even upon a mere preponderance of evidence, but only upon a certainty of error." The same rule was enunciated in Giammares v. Allemannia Fire Insurance Co., 91 N.J. Eq. 114.
`"The demonstration of mistake must be clear and satisfactory, such as produces a strong conviction of the truth." Universal Security Co. v. American Pipe and Construction Co., 95 N.J. Eq. 752; Brook Avenue Land Co. v. Cadillac Development Co., 101 N.J. Eq. 55.' Cf. Parrette v. Citizens' Casualty Co. of New York, 128 N.J. Eq. 206 (E. & A. 1940); Pomeroy's Equity Jurisprudence, § 1376, pp. 1000-1."
See also, Asbestos Fibres, Inc. v. Martin Laboratories, Inc., 12 N.J. 233, 240 (1953).
There is no fraud here alleged. There is no mutual mistake. Nor do I conceive that any wrong has been suffered by Jennie Smith. It is significant that, although the accident happened in February 1955 and the general release was given to Czaban in August 1957, Mrs. Smith claims she knew nothing about the subrogation clause in her policy until she was informed of it by the plaintiffs' attorney (now acting as her attorney) in February 1958.
A summary judgment for the defendant against the plaintiffs on the amended complaint will be entered. No costs.