Meier Steinbrink,
Spec. Ref. Plaintiff brings this declaratory judgment action to declare invalid the “subrogation” portion of his automobile insurance policy as it applies to medical payments and to declare invalid two trust receipts exacted of him by defendant, his insurance carrier, as a condition to payment of his claim for medical expenses. There is no substantial dispute as to the facts.
On May 27, 1962, plaintiff, a resident of the State of New York, for a premium which he paid, including the premium for medical payments, purchased an automobile owner’s insurance policy from defendant Liberty Mutual Fire Insurance Company, hereafter referred to as Liberty. Medical payments’ limit of coverage was $2,000. The policy is in evidence as plaintiff’s Exhibit 1 and is in the form submitted to the Superintendent of Insurance of the State of New York, pursuant to section 141 of the Insurance Law and not disapproved by him.
On December 21,1962, while operating a borrowed automobile covered by the policy in question, plaintiff was in collision with another vehicle and sustained serious personal injuries requiring medical expenses. In March, 1963, plaintiff presented to Liberty on its form, a “ Medical Payments Proof of Claim ” for $1,723.25 and in September, 1963, one for $325. He discussed these claims with a representative of Liberty at their office and was told that the claims would not be paid unless he executed the trust receipts. There is no evidence whatever that he registered any protest. When these trust receipts were signed by plaintiff, himself a lawyer of more than 30 years’ experience, Liberty paid a total of $2,000, the limit of coverage.
Plaintiff brought an action for personal injuries against the tort-feasor claimed responsible for his injuries. That action subsequently was settled. Liberty claimed a lien for the $2,000 *104 paid to plaintiff by it and notified the third-party’s insurance carrier of its claim but that carrier chose to ignore the claim and paid plaintiff the full settlement. It is plaintiff’s contention that his personal injuries were so severe that the settlement obtained was based on the injury and the limited coverage of the third party and not on the medical expenses incurred by him. This declaratory judgment action followed.
The portion of the policy involved reads as follows:
“ Subrogation:
‘ ‘ In the event of any payment under the Liability Coverage or under Part II of this policy, the company shall be subrogated to all the insured’s rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.
“In the event of any payment under the Medical Expense Coverage of this policy, the company shall be subrogated to all the rights of recovery therefor which the injured person or anyone receiving such payment may have against any person or organization and such person shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.”
This is pleaded in paragraph “ Tenth ” of the complaint and admitted by Liberty.
Plaintiff contends that this is invalid in New York State as against public policy because he contends it is an assignment of part of a claim for personal injuries (General Obligations Law, § 13-101, formerly Personal Property Law, § 41; General Acc. Fire & Life Assur. Corp. v. Zerbe Constr. Co., 269 N. Y. 227, supra; City of New York v. Barbato, 5 N. Y. S. 2d 125). Liberty contends that the policy provision is valid and is an equitable lien on any recovery and not an assignment of the claim. It, also, contends that in any event the trust receipts are valid in New York and are merely equitable liens on any recovery, not assignments of the claim. Plaintiff contends that the trust receipts are invalid as assignments of a cause of action for personal injuries and were obtained from him without consideration and under duress. The trust receipt so far as material, reads:
“ I, William S. Miller * # * agree to hold in trust for the benefit of the company all rights of recovery the undersigned shall have against anyone who may be legally liable for the damages from such injuries and agree that the company shall *105 be entitled, to the extent of its payment hereunder, to the proceeds of any settlement or judgment that may result from the exercise of any such rights and agree to do whatever is proper to secure such rights and take, through any representative designated by the company, such action as may be necessary and appropriate to recover the damages suffered by the undersigned in said accident, arid that such action may be taken in the name of the undersigned and that, in the event of a recovery, the company shall be reimbursed out of such recovery for expenses, costs and attorneys’ fees incurred by it in connection therewith and to execute and deliver to the company such instruments and papers as may be appropriate to secure the rights and obligations of the insured and the company established by the provisions of said policy.
“ These covenants are given pursuant to the Medical Expense Coverage and Subrogation provisions of said policy.”
It will not do for the plaintiff to assert that he is not bound by the provisions of the policy and the trust receipts as signed and submitted by him, and for a number of reasons: he had possession of the policy from the time of its issuance and is chargeable with knowledge of its contents; and, again, he is bound by what he has signed. If it is claimed that this highly intelligent plaintiff did not know the provisions of his policy or what the trust receipts contained, then it was his duty to read them or to have someone read them to him (Matter of Stone, 272 N. Y. 121; Pimpinello v. Swift & Co., 253 N. Y. 159).
The claim of duress requires little consideration. Plaintiff, an experienced attorney, was not coerced into signing the trust receipts but chose to do so voluntarily in order to receive prompt payment. He could have refused and brought an action on the policy. Of course if the agreement is void in New York State as a matter of public policy or obtained without consideration, that is another matter. Going first to the policy subrogation provisions previously set forth, which apparently are in the form used by Liberty in all States in which it does business, the language used cannot properly be construed as a partial assignment of a personal injury claim. The contrary was urged by Liberty in California where, under a similar policy, it demanded a written assignment before paying the claim (see Peller v. Liberty Mut. Co., 220 Cal. App. 2d 610). This was held invalid as would an assignment of all or part of a personal injury claim in New York be invalid (General Obligations Law, § 13-101, formerly Personal Property Law, § 41; General Acc. Fire & Life Assur. Corp. v. Zerbe Constr. Co., supra; City of New York v. Barbato, supra).
*106 The distinction between the Peller case (supra) and the instant case is that here, unlike in California, the New York Superintendent of Insurance passed upon the provisions of the policy and the trust receipts and Liberty does not claim an assignment but an “ equitable lien by subrogation on any recovery The language of the policy is bjoad but, construed as a whole, constitutes such subrogation and permits the exaction of the trust receipts. These, rightly construed, are not assignments of the cause of .action for personal injuries but agreements by the insured to hold as trustee for the benefit of his insurer any recovery by him from third parties for the medical expenses for which he has been reimbursed by his insurer to the extent of such payment. In the Peller case (supra) no such trust receipts were used by Liberty. It seems likely that where an assignment is not invalid, Liberty requests an assginment of part of the claim, but where, as in New York State, this is invalid, it requires a trust receipt to secure its equitable lien of subrogation. Such subrogation as to the proceeds of a recovery is not invalid in New York. To hold otherwise would unjustly enrich plaintiff and change the risk coverage assumed by Liberty. The distinction is clearly set forth in New York Jurisprudence, Assignments (vol. 3, § 17, pp. 273-274), as follows : ‘ ‘ There is a distinction between an assignment of a cause of action itself and an assignment of the proceeds of whatever recovery is had in such action. Although a cause of action for personal injuries is not assignable, an assignment of the share of the proceeds to be recovered has been regarded as enforceable as an equitable assignment. It has been declared that the assignment could not attach or become a legal assignment until there Was á definite settlement or judgment and an appropriation of the proceeds; that until then, the assignee’s rights are enforceable only in equity, and that all the law gives the assignee is a right to demand that the assignor take proper steps to enforce the cause of action. The control of the action or the consummation of any settlement is exclusively in the hands of the assignor, and if after a settlement the tortfeasor in good faith paid the assignor, he has breached no obligation to the assignee.”
In my opinion there is no merit to plaintiffs contention that the subrogation provisions of the policy and of the trust receipts are invalid nor to his contention that the trust receipts were obtained by Liberty without consideration or by duress. This being a declaratory judgment action, it is appropriate that the rights and obligations of the parties be declared: (1) The policy provision in question is not an assignment of all or part of a *107 claim for personal injuries. Were it such an assignment, it would be invalid as against public policy in the State of New York. (2) The policy provision creates an equitable lien by subrogation against any recovery by the insurer from a third party by reason of medical expenses paid to the insured. (3) The trust receipts in question are valid and proper. Under the terms of the policy their exaction by Liberty as a condition to payment of the claim to plaintiff for medical expenses was not improper, invalid or illegal and they were not obtained by duress or without consideration. (4) The trust receipts are valid and make plaintiff a trustee only to the extent that he receives any proceeds of that portion of his claim arising out of the medical expenses for which he has received reimbursement from Liberty.
Accordingly, there will be judgment for the defendant on the merits, but, without costs.