FRANK S. BERLINSKI ET AL. *v.* MAURICE OVELLETTE
ET AL.

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued November 10, 1972—decided March 21, 1973

*Michael H. Heneghan,* with whom, on the brief, was *William D. Graham,*[1] for the appellants (defendants).

*Richard A. Walsh,* with whom, on the brief, was *Joseph F. Skelley, Jr.,* for the appellees (plaintiffs).

HOUSE, C. J. This is an appeal from a judgment for the plaintiffs rendered following a trial to the court of an automobile negligence action. The judgment awarded damages to the named plaintiff for personal injuries and to his father for property damage to the latter's automobile. The parties stipulated to the facts and confined the sole issue on the appeal to the validity and effect of a so-called trust agreement entered into between Frank S. Berlinski, hereinafter referred to as the plaintiff, and Allstate Insurance Company, hereinafter referred to as Allstate.

The stipulated facts may be briefly summarized. As a result of a collision between two automobiles, admittedly caused by the negligence of the named defendant while operating a family car owned by the defendant Tessie Ovellette, the plaintiff, who was operating an automobile owned by his father, sustained personal injuries. At the time of the accident, neither defendant was insured under any insurance policy which would compensate or indemnify the plaintiff. The plaintiff's father, however, carried insurance with Allstate which not only insured him as the owner of the car but also insured operators of and passengers in the car against in-

---

[1] The defendants' brief was prepared and filed before Judge Graham was appointed a judge of the Circuit Court.

juries suffered by them as the result of a collision with an uninsured car. In accordance with the provisions of the policy, Allstate paid $1000 to the plaintiff to compensate him for the personal injuries he sustained in the accident. It is agreed that that sum was reasonable compensation for those injuries.

As required by Allstate, the plaintiff, as an insured operator of the car, on receiving the $1000 payment from Allstate executed a "Trust Agreement." He agreed as "trustee" to hold for Allstate as "beneficiary" all rights, claims and causes of action he might have against any other party because of the claim he had made against Allstate and as trustee to take, through any representative designated by Allstate, such action as might be necessary or appropriate to recover the damages paid to the trustee, such action to be taken in the name of the trustee but with all costs and expense in connection therewith to be paid by Allstate. The agreement also provided that any money recovered by the trustee as the result of such action would be held in trust and paid to Allstate, provided, however, that any sum recovered in excess of the total amount paid by Allstate to the trustee should be retained by the trustee for his own use and benefit.

To the complaint filed against the defendants in the plaintiff's name, the defendants, although acknowledging liability for any property damage, interposed a special defense to the plaintiff's claim for damages for personal injuries, alleging that (1) the plaintiff is not the real party in interest but is suing on behalf of his insurer which, having reimbursed the plaintiff, is seeking recoupment by virtue of the subrogation clause; (2) the provisions of the trust agreement, whereby the plaintiff agreed to take, through a representative designated by the

insurance company, such action as was necessary to recover the damages paid the plaintiff and to hold and pay over to the insurer any moneys he recovered, and whereby the insurer would pay the costs and expenses in connection with that suit, are against the public policy of the state of Connecticut; (3) the subrogation agreement as it relates to claimed personal injuries is the assignment of a personal injury claim; and (4) the plaintiff had already been compensated for his injuries. The trial court concluded that the trust agreement was not contrary to public policy and was "legally enforceable" against the defendants and rendered judgment accordingly. As we have noted, the only claim of error pressed on this appeal is the conclusion of the court that the trust agreement was not contrary to public policy but was "legally enforceable" against the defendants.

Under common law a cause of action for personal injuries cannot be assigned, and in the absence of a statutory provision to the contrary a right of action for personal injuries resulting from negligence is not assignable before judgment. 6 Am. Jur. 2d 220, Assignments, § 37. The rule is succinctly stated in the Restatement, 2 Contracts § 547 (1) (d): "An assignment of a claim against a third person or a bargain to assign such a claim is illegal and ineffective if the claim is for . . . (d) damages for an injury the gist of which is to the person rather than to property, unless the claim has been reduced to judgment." The annotation, "Assignability of claim for personal injury or death," 40 A.L.R.2d 500, 502 § 3, has noted: "It seems that few legal principles are as well settled, and as universally agreed upon, as the rule that the common law does not permit assignments of causes of action to recover for

personal injuries." See cases therein cited. The rule was early recognized in Connecticut. See *Whitaker* v. *Gavit,* 18 Conn. 522, 526. The reasons underlying the rule have been variously stated: unscrupulous interlopers and litigious persons were to be discouraged from purchasing claims for pain and suffering and prosecuting them in court as assignees; actions for injuries that in the absence of statute did not survive the death of the victim were deemed too personal in nature to be assignable; a tort-feasor was not to be held liable to a party unharmed by him; and excessive litigation was thought to be reduced. *Robins Dry Dock & Repair Co.* v. *Flint,* 275 U.S. 303, 48 S. Ct. 134, 72 L. Ed. 290; *Rice* v. *Stone,* 83 Mass. 566; note, 40 A.L.R.2d 500. The more modern cases suggest that such an assignment directly or indirectly serves to prejudice the ultimate ability of the injured person to be compensated fully. See *Harleysville Mutual Ins. Co.* v. *Lea,* 2 Ariz. App. 538, 410 P.2d 495; *Fifield Manor* v. *Finston,* 54 Cal. 2d 632, 354 P.2d 1073; *Forsthove* v. *Hardware Dealers Mutual Fire Ins. Co.,* 416 S.W.2d 208, 215–18 (Mo. App.).

If the General Assembly has not modified the common-law rule, it enjoys continuing validity. The plaintiff contends that the common-law rule is not applicable in the circumstances of this case basically for two reasons. First, he contends that the trust agreement between himself as the injured plaintiff and the insurance company which insured occupants of his father's automobile did not constitute an assignment of a personal injury claim. Second, he asserts that the public policy against the assignment of a personal injury claim has been modified in this state by a regulation of the insurance commissioner authorizing such a trust agree-

ment as was used in this case, such authorization having been granted to the commissioner by statute. General Statutes § 38-175a; Regs. Conn. State Agencies § 38-175a-6 (e).

## I

Regardless of form and the protective coloration employed by use of the term "trust agreement," it is an inescapable conclusion that the trust agreement purported to transfer from the plaintiff to Allstate the right to pursue at Allstate's own expense and by its own choice of counsel, and in the name of the plaintiff, the plaintiff's cause of action against the defendants to recover for itself damages for all his personal injuries and retain for itself any damages it recovered to the extent of its payment to the plaintiff. By whatever name the parties chose to call the agreement[2] and the transfer of the cause of action, it was in essence an assignment of a cause of action for personal injuries and, in the absence of legislative change in the common-law rule against such an assignment, is contrary to public policy and impermissible.

With the more recent development of insurance provisions for hospital and medical expenses, medical payments, and protection against uninsured motorists, many cases have arisen in other jurisdictions. There has been a wide diversity of opinion and the results have been far from uniform. Some courts have strictly adhered to the rule that the common law does not permit such assignments. See,

---

[2] It has previously been suggested that such agreements as that in this case "may have been so labeled in order to avoid the effect of these appellate decisions [affirming the nonassignability of personal injury claims]." Widiss, Uninsured Motorist Coverage § 5.5 n.12.

e.g., *Harleysville Mutual Ins. Co.* v. *Lea,* supra; *Forsthove* v. *Hardware Dealers Mutual Fire Ins. Co.,* supra; *City of Richmond* v. *Hanes,* 203 Va. 102, 122 S.E.2d 895. Other courts, while recognizing the common-law rule, have concluded that the rule no longer prevails in their jurisdictions. See *Davenport* v. *State Farm Mutual Automobile Ins. Co.,* 81 Nev. 361, 404 P.2d 10; *Smith* v. *Motor Club of America Ins. Co.,* 54 N.J. Super. 37, 148 A.2d 37; *Hospital Service Corporation* v. *Pennsylvania Ins. Co.,* 101 R.I. 708, 227 A.2d 105. Some courts have concluded that in the cases before them the policy provisions provide only for permissible subrogation and do not constitute an assignment. See *Higgins* v. *Allied American Mutual Fire Ins. Co.,* 237 A.2d 471 (D.C. App.); *Hardware Dealers Mutual Fire Ins. Co.* v. *Ross,* 129 Ill. App. 2d 217, 262 N.E.2d 618; *City of New York Ins. Co.* v. *Tice,* 159 Kan. 176, 152 P.2d 836; *Travelers Indemnity Co.* v. *Rader,* 152 W. Va. 699, 166 S.E.2d 157. Some have concluded that the policy provisions before them merely created an equitable lien against any damages the injured insured might recover. See *Bernardini* v. *Home & Automobile Ins. Co.,* 64 Ill. App. 2d 465, 212 N.E.2d 499; *Davenport* v. *State Farm Mutual Automobile Ins. Co.,* supra; *Miller* v. *Liberty Mutual Fire Ins. Co.,* 48 Misc. 2d 102, 264 N.Y.S.2d 319. The Supreme Court of Rhode Island has indicated that in that state the public policy against assignment of actions for personal injuries has been superseded by the present-day need for hospitalization insurance coverage and expressed the hope "that this policy of recovery from tort-feasors may tend to reduce rates charged to subscribers." *Hospital Service Corporation* v. *Pennsylvania Ins. Co.,* supra, 715.

We conclude that the sounder reasoning is found in cases such as *Hardware Dealers Mutual Fire Ins. Co.* v. *Krueger,* 486 P.2d 737, 738 (Okla.): "Regardless of the words used it appears to us that the . . . provisions merely attempt to change (by transfer) the party entitled to enforce the personal injury claim . . . . As applied to the present circumstances there is nothing distinguishable between the effect of subrogation and assignment. While subrogation and assignment have certain technical differences, each operates to transfer from one person to another a cause of action against a third person . . . ." The Supreme Court of California reached the same conclusion, stating in *Fifield Manor* v. *Finston,* 54 Cal. 2d 632, 640, 354 P.2d 1073: "While subrogation and assignment have certain technical differences, each operates to transfer from one person to another a cause of action against a third, and the reasons of policy which make certain causes of action nonassignable would seem to operate as forcefully against the transfer of such causes of action by subrogation." Subrogation, where applied in a manner to transfer the right to designate counsel, to initiate, to settle and generally to control a suit, is not practically different from assignment.

There is, of course, a crucial distinction between an enforceable interest in the proceeds of an action and the right to maintain the action itself. Once the insured has litigated a claim, the policy prohibiting the assignment of personal injury claims does not necessarily interfere with equitable subrogation and an equitable disposition of the proceeds. On this basis a New York court has upheld an insurer's recovery from the insured of a portion of the proceeds of his judgment where it held a trust receipt for an equitable lien on them, because

the " 'control of the action or the consummation of any settlement . . . [was] exclusively in the hands of the assignor.' " *Miller* v. *Liberty Mutual Fire Ins. Co.,* 48 Misc. 2d 102, 106, 264 N.Y.S.2d 319, aff'd, 29 App. Div. 2d 982, 289 N.Y.S.2d 726. Other cases recognizing the material distinction include *Alabama Farm Bureau Mutual Casualty Ins. Co.* v. *Anderson,* 48 Ala. App. 172, 263 So. 2d 149, cert. denied, 288 Ala. 538, 263 So. 2d 155; *International Sales-Rentals Leasing Co.* v. *Nearhoof,* 263 So. 2d 569 (Fla.); *National Union Fire Ins. Co.* v. *Grimes,* 278 Minn. 45, 153 N.W.2d 152; *Travelers Indemnity Co.* v. *Rader,* supra. In *Reese* v. *Preferred Risk Mutual Ins. Co.,* 457 S.W.2d 205, 210 (Mo. App.), the court noted that the trust agreement involved in the case before it "only gives the insurer the right to be reimbursed from the proceeds of any settlement or judgment which the insured obtained from the uninsured motorist." Even in *Remsen* v. *Midway Liquors, Inc.,* 30 Ill. App. 2d 132, 174 N.E.2d 7, on which the plaintiff relies and which upheld the validity of a trust agreement, the insurer had intervened after judgment and sought only its equitable share of the proceeds.

We conclude that to the extent that the trust agreement in this case purports to transfer to Allstate the right to prosecute and control at its own expense and by its choice of counsel the plaintiff's cause of action against the defendants for his personal injuries it is contrary to public policy and void unless the common-law public policy of the state has been changed by the General Assembly.

## II

We next consider the claim of the plaintiff that the common-law public policy of the state has indeed

been changed. It is his claim that the change was effected by regulations promulgated by the state insurance commissioner concerning policy requirements for uninsured motorists protection and that these regulations were authorized by act of the legislature.

Uninsured motorists insurance protection is of relatively recent origin.[3] The Connecticut statutes requiring automobile insurers to offer uninsured motorists coverage, now General Statutes §§ 38-175a to 38-175e, were enacted in 1967. Public Acts 1967, No. 510, amended, Public Acts 1969, No. 202 (§ 38-175c); Public Acts 1971, Nos. 364 (§ 38-175a [a]), 767 (§ 38-175c). The insurance commissioner was directed to adopt regulations relating, inter alia, to "medical payments and uninsured motorists coverages under [liability] policies." § 38-175a. It was provided that these policies were to include provisions "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . because of bodily injury . . . ." § 38-175c.

The commissioner issued regulations requiring, in pertinent part, that, with respect to uninsured motorists coverage, the insurer shall pay all sums which the "insured shall be legally entitled to recover" from the tort-feasor, up to the limit of the policy. Regs. Conn. State Agencies § 38-175a-6 (a). Regulation 38-175a-6 (c) states that the insurer is not so obligated if, inter alia, the insured should settle with the tort-feasor without the consent of the

[3] See Katz, "Automobile Medical Payments Coverage—A Changing Concept?" 28 Ins. Counsel J. 276; Kimball & Davis, "The Extension of Insurance Subrogation," 60 Mich. L. Rev. 841; comment, 48 Calif. L. Rev. 516; note, 1962 Wash. U.L.Q. 134.

insurer, and § 38-175a-6 (d) provides for a reduction in the amount of the insurer's obligation equal to the amount the insured receives from other sources. Regulation 38-175a-6 (e) states that the "insurer may require the insured to hold in trust all rights against third parties or to exercise such rights after the insurer has paid any claim."

The trust agreement in the present case obviously goes far beyond the scope of the power and authority purportedly granted by the commissioner's regulation, if we assume, without deciding, that the regulation as it stands was itself within the scope of the authority granted by statute to the insurance commissioner.[4] The regulation relied on by the plaintiff (§ 38-175a-6 [e]) provides only that the insurer may require the insured to hold in trust all rights against third parties or to exercise such rights after the insurer has paid any claim. The governing statute (§ 38-175c) refers only to proceeds which the "persons insured" are legally entitled to recover, and there is neither statutory nor regulatory provision authorizing a policy provision that the compensated insured execute a "trust agreement" that he will hold as trustee for the benefit of the insurance company all his "rights, claims and causes of action" and will "take, through any representative designated by the beneficiary, such action

[4] We note that the statute is designed for the benefit of those insured; *Fidelity & Casualty Co.* v. *Darrow,* 161 Conn. 169, 180–81, 286 A.2d 288; and that the statute refers only to rights the insured may have against third parties. While the insurance commissioner is explicitly authorized by § 38-175a to issue regulations to effect the purposes of the statute, any regulations which exceed the authority granted to the commissioner are void. *Fidelity & Casualty Co.* v. *Darrow,* supra, 181. There is authority that implied regulatory powers "do not extend to the adoption of a rule abrogating the ancient rule . . . [of nonassignability]." *City of Richmond* v. *Hanes,* 203 Va. 102, 108, 122 S.E.2d 895.

as may be necessary or appropriate to recover the damages." There is no statute or regulation authorizing a transfer of total control over the insured's cause of action for his personal injuries upon being compensated under the provisions of an uninsured motorists policy provision.

The lack of any such express statutory or regulatory modification of the common-law public policy against the assignment of personal injury causes of action, or of statutory authority for an independent action by the insurance company in its own name or in the name of the insured, stands in sharp contrast to the express statutory provisions governing the rights of workmen's compensation insurance carriers. In those cases the legislature has expressly and clearly modified the common-law rule.[5] The legislature obviously knows well how to modify the common-law rule if it deems it advisable to do so.

Clearly, there are policy reasons which may well prompt the General Assembly to modify the common-law rule in the case of uninsured motorists insurance. The same reasons may or may not

---

[5] The rights of workmen's compensation insurers are set out in detail in General Statutes § 31-293, which commences with the provision: "When any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee may claim compensation under the provisions of this chapter, but the payment or award of compensation shall not affect the claim or right of action of such injured employee against such other person, but such injured employee may proceed at law against such person to recover damages for such injury; and any employer having paid, or having become obligated to pay, compensation under the provisions of this chapter may bring an action against such other person to recover any amount that he has paid or has become obligated to pay as compensation to such injured employee."

prompt similar modification in the case of Blue Cross, the Connecticut Medical Service, medical payments insurance, accident insurance, and double indemnity benefits under life insurance policies. Obviously, any such legislation must be concerned with problems which may arise if insurance companies are to be permitted in all such cases to proceed as Allstate in this case has attempted to do. The difficulty and confusion which could arise if a workman who carried Blue Cross, CMS, accident and uninsured motorists insurance were injured in the course of his employment by an uninsured, negligent tort-feasor and each insurance carrier were permitted to engage its own counsel and separately sue the tort-feasor in the name of the injured plaintiff is patent. The problem is one which by its very nature can best be regulated and controlled by legislative enactment.

We find ourselves in complete agreement with the holding of the California District Court of Appeals in *Peller* v. *Liberty Mutual Fire Ins. Co.*, 220 Cal. App. 2d 610, 612, 34 Cal. Rptr. 41: "If an insurance company is to be allowed the right to indemnify itself by subrogation of the insured's right to press a claim arising out of personal injuries, against a third party tortfeasor, that right must emanate from legislative action and not from court-made law."

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendants.

In this opinion SHAPIRO and BOGDANSKI, Js., concurred.

MACDONALD, J. (dissenting). I cannot agree with the conclusion of the majority that the trust agreement under consideration is void as against the

public policy of the state of Connecticut. Although I do agree that, for all practical purposes, it constitutes an assignment of a tort claim, the common-law objections on public policy grounds are not present here, since the subrogated insurance company obviously is not to be placed in the class of "unscrupulous interlopers and litigious persons" mentioned in the majority opinion, engaged in buying up tort claims. On the contrary, it was obligated by its contract to pay the insured and was required to offer him a contract of the type which created its obligation by regulations issued by the insurance commissioner pursuant to the mandatory provisions of § 38-175a of the General Statutes.[6] The relevant regulations issued by the commissioner pursuant to this statute and in effect at all times pertinent to this case specifically (1) required that policies issued by the insurer include protection against uninsured motorists and (2) authorized the insurer to require the insured to hold in trust all rights against third parties.[7] It seems quite clear that the

---

[6] "[General Statutes] Sec. 38-175a. MINIMUM PROVISIONS IN AUTO-MOBILE LIABILITY POLICIES. (a) Within ninety days from October 1, 1967, and from time to time thereafter, the insurance commissioner shall adopt regulations with respect to minimum provisions to be included in automobile liability insurance policies issued after the effective date of such regulations and covering private passenger automobiles . . . registered or principally garaged in this state. Such regulations shall relate to the insuring agreements, exclusions, conditions and other terms applicable to the bodily injury liability, property damage liability, medical payments and unisured motorists coverages under such policies and shall make mandatory the inclusion of bodily injury liability, property damage liability and uninsured motorists coverages. . . ."

[7] "[Regs. Conn. State Agencies] Sec. 38-175a-1. REQUIRED AREAS OF COVERAGE. Policies shall contain at least the following coverages, as hereinafter described: (1) Bodily injury liability and property damage liability; (2) protection against uninsured motorists. Any such policy which, under a separate coverage, undertakes to pay,

trust agreement was specifically authorized by regulations issued pursuant to legislative mandate and that the legislature, by implication if not by express mandate and authorization to the insurance commissioner, abrogated the common law by authorizing subrogation under the specific circumstances existing in this case. In view of possible attempts to expand this abrogation or exception to include claims for subrogation in contracts of insurance relating to the so-called Blue Cross and CMS coverage, accident insurance, double indemnity under life insurance, and the like, it would seem desirable for the legislature to clarify and limit this apparent exception to general policy. Pending such clarification, however, the existing statute and regulations make clear the legislative intent that leads to the conclusion expressed here.

Likewise, I cannot agree with the claim of the defendants that the trust agreement is illegal by reason of its specific provision that the insurer has the right to designate counsel and agrees to pay the costs and expenses of suit. The short answer is that both insured and insurer have a financial interest in the litigation. "[E]ven in jurisdictions where the common law of champerty and maintenance prevails the general rule is that any real interest, great or small, certain or uncertain, in the subject-matter of the suit of another, affords a just reason to the party who has such an interest for participating in the suit and exempts him from the charge of illegal

irrespective of fault, medical expense resulting from bodily injury sustained in automobile accidents, shall provide insurance as hereinafter described for medical payments."

"[Regs. Conn. State Agencies] Sec. 38-175a-6 (e). RECOVERY OVER. The insurer may require the insured to hold in trust all rights against third parties or to exercise such rights after the insurer has paid any claim. . . ."

maintenance because of his giving aid to the suitor." *Bridgeport* v. *Equitable Title & Mortgage Co.,* 106 Conn. 542, 550, 138 A. 452. These provisions in the policy are necessary fully to protect the respective rights of the parties who have suffered loss. I see no reason why under these provisions the insurer, Allstate, as one of those parties, should not select counsel and pay the costs of suit since it has a substantial financial interest in recovering its loss. It is, of course, possible that in the course of such litigation a conflict of interest might arise in which the same attorney properly should not represent the interests of both the insurance company and the insured, but, in the present case, there is no suggestion that such a situation existed.

I would affirm the judgment rendered by the trial court.

In this opinion LOISELLE, J., concurred.