[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING RE: MOTION TO STRIRE[1] (#103) AND OBJECTION (#111)
Plaintiff, Fidelity Deposit Co. of Maryland ("Fidelity"), CT Page 13946 alleges that defendant, William Bradley, while an agent and employee of Local 1565 of the American Federation of State, County, and Municipal Employees ("Local"), misappropriated funds for his own use when he "submitted false reimbursement requests and expense statements to the Local and received reimbursement. . . ." Plaintiff further alleges that defendant "made no payment to the Local for the value of the property which he converted to his own use and gain, despite demand therefor." Plaintiff alleges that it indemnified the Local for the loss it sustained pursuant to a certain insurance policy and surety bond. As a result of defendant's actions, Fidelity paid the Local $40,274.02; plaintiff claims attorney's fees and costs.
More specifically, count one alleges that defendantmisappropriated, by misrepresentation and wrongful conversion, funds for which the Local was indemnified by plaintiff. Further, that Fidelity paid the Local for its loss under the policy and bond when defendant failed to make restitution. Plaintiff claims that defendant owes it the amount paid plus attorney's fees, costs, and statutory interest. Count two, alleges that defendant, while employed by the Local, without just cause or excuse, and without the knowledge and consent of the Local, caused a loss to the Local in the amount set forth, and thus is indebted to plaintiff who indemnified that loss. Count three, alleges defendant stole property of the Local by wrongfulappropriation and false pretenses, and thus, plaintiff is entitled to treble damages under the statutory remedy set forth in General Statutes § 52-564. The fourth count, alleges defendant willfully breached his fiduciary duty and his duty oftrust by wrongful acts and omissions. Plaintiff seeks monetary damages, interest and costs, exemplary damages, double damages pursuant to General Statutes § 52-565, and attorney's fees. Defendant has filed a motion to strike the first, third and fourth counts of the complaint, paragraphs 4, 8, 9, 10, 13 and 14 of the second count, and paragraphs 4, 5, 6, and 7 of the claim for damages. Defendant argues that plaintiff lacks standing to assert the above claims, and therefore, the allegations are legally insufficient. He argues that the causes of action are those of the Local, and since they were never assigned to Fidelity, the corporate plaintiff has no standing to bring this action. Defendant further argues that plaintiff cannot seek relief on the asserted claims absent citing in the Local as a necessary and indispensable party. He maintains that since plaintiff lacks standing, the above counts and paragraphs should be stricken, thereby leaving plaintiff with no basis for its CT Page 13947 prayers for relief in paragraphs 4, 5, 6, and 7. Finally, defendant argues that there is no statutory or contractual justification for attorney's fees.
 I.
The function of a motion to strike is to test the legal sufficiency of a pleading; like the former demurrer, the motion admits all facts well pleaded. Ferryman v. Groton,212 Conn. 138, 142 (1989). The motion contests "the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." Faulkner v. United TechnologiesCorp., 240 Conn. 576, 580 (1997). The court, in deciding a motion to strike, is limited to the facts alleged, which must be construed most favorably to the non-movant; if the facts provable under the complaint would support a cause of action, the motion to strike must be denied. Id.
Here, defendant's motion challenges the jurisdiction of this court to hear and determine plaintiff's claims on the basis that the corporate plaintiff, as an insurer/surety/indemnifier, lacks standing to bring this suit. Such contention is more appropriately raised and asserted through a motion to dismiss. However, "`[o]nce the question of lack of jurisdiction is raised, [it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case . . .'"[2] Figueroa v. C. S.Ball Bearing, 237 Conn. 1, 4 (1996).
An issue of standing "implicates a court's subject matter jurisdiction which may be raised at any point in judicial proceedings." Stamford Hospital v. Vega, 236 Conn. 646, 656
(1996). "When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue and not whether the controversy is otherwise justiciable, or whether, on the merits, the plaintiff has a legally protected interest that the defendant's action has invaded." Berlin v. Santaguida,181 Conn. 421, 423-24 (1980); Tucker v. Connecticut Natural Gas, Superior Court, Judicial District of Hartford-New Britain, Docket No. 323266 (December 18, 1990).
 II.
Defendant moves to strike counts one, three and four of the CT Page 13948 complaint on the ground that plaintiff lacks standing (he also argues that plaintiff has failed to include the Local as a necessary and indispensable party). Defendant maintains that the alleged causes of action are actually those of the Local because none of the claims are based on injuries suffered by theplaintiff insurance company, but rather, are claims predicated on injuries suffered by the Local.
Plaintiff responds that, as an insurer, it is the subrogee of the rights of the Local, and thus, may bring these claims against defendant, the action having become the right of the insured. It contends that the principle of subrogation allows it as an insurer to step into the shoes of the insured and recover the indemnified losses of the insured caused by the third party.
"Upon payment [to its insured as the result of a preexisting contract], the insurer [becomes] subrogated to the rights its insured may have had against the party responsible for the loss."Westchester Fire Ins. Co. v. Allstate Ins. Co., 236 Conn. 362,373 (1996). Practice Book § 104, entitled "Suit by RealParty in Interest," provides: An action may be brought in all cases in the name of the real party in interest, but any claim or defense may be set up which would have been available had the plaintiff sued in the name of the nominal party in interest. It has been held that "an insurance company, as subrogee of an insured's rights, is a real party in interest and as such may sue in its own name to enforce those rights, as provided by § 104 of the Connecticut Practice Book . . ." Hartford A I v.Barney, Superior Court, Judicial District of Hartford-New Britain, Docket No. 381782 (April 8, 1991) (6 C.S.C.R. 508).
"`[S]ubrogation against third persons causing the loss paid by the insurer to the insured does not rest upon any relation of contract or privity between the insurer and such third persons, but arises out of the contract of insurance and is derived from the insured alone. . . .'" Ottoshavett v. The Four D's, Inc., Superior Court, Judicial District of Stamford/Norwalk, Docket No. 103279 (July 19, 1994), quoting Orselet v. DeMatteo,206 Conn. 542, 546, 539 A.2d 95 (1988); see also Connecticut Life Casualty Ins. Co. v. Kanter, Superior Court, Judicial District of Danbury, Docket No. 322291 (July 29, 1996) ("Subrogation is the machinery by which the equity of one man is worked out through the legal rights of another. . . ."); American States v. Cocheo, Superior Court, Judicial District of New London, Docket No. 529362 (June 13, 1996) (17 Conn. L. Rptr. 167) ("Under the CT Page 13949 doctrine of subrogation, 'an insurer indemnifying an insured against loss occasioned by the wrongful act of a third person, is ordinarily subrogated to the rights of the insured against the third person on the equitable principle that the ultimate loss should fall on the one who, in good conscience, ought to bear it.'")
Plaintiff alleges subrogation rights with respect to all four counts of this complaint. Paragraph #12 alleges that pursuant to the insurance policy, Fidelity paid its insured, the Local, for damages sustained as a result of defendant's actions; therefore, it is now subrogated to the insured's rights of recovery against defendant. Thus, defendant's contention that plaintiff has no standing to bring this action absent an assignment of the rights of the insured is, in my view, without merit.
Furthermore, the law recognizes two types of subrogation: conventional and legal or equitable. Conventional subrogation has effect only by agreement and has been said to be synonymous with assignment. It occurs where one having no interest or relationship to the matter pays the debt of another and, by agreement, obtains the rights and securities of the satisfied creditor. Equitable subrogation, on the other hand, does not arise from any contractual relationship between the parties, but is operative as a matter of equity, with or without an agreement; the object of equitable subrogation is the prevention of injustice and it is the mode by which equity compels the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it. Westchester Fire Ins. Co. v. AllstateIns. Co., 236 Conn. supra at p. 370-71. Equitable subrogation involves an "insurer . . . obligated by a preexisting contract of insurance to pay the losses of its insured. Upon such payment, the insurer [becomes] subrogated to any rights that its insured might have had against the party who had caused the loss." Id. at p. 372. Thus, plaintiff does not need an assignment from the insured in order to bring this action, but rather, can bring the action independently, as subrogee of the insured Local.
For the aforestated reasons, the court concludes that the motion to strike counts one, three, and four must be denied.[3]
 III.
Defendant moves to strike paragraphs #4, #8, #9, #10, #13, and #14 of the second count;[4] he asserts the same ground on CT Page 13950 which he moved to strike counts one, three, and four (i.e., plaintiff's lack of standing). The court's ruling as set forth in the preceding section is dispositive of defendant's claim.
Additionally, "[a] single paragraph or paragraphs can only be attacked for insufficiency when a cause of action is therein attempted to be stated. . . ." Edelwich v. 33 Sumner Associates, Superior Court, Judicial District of Hartford-New Britain, Docket No. 527767 (May 19, 1994) (9 C.S.C.R. 620); see also Zamstein v.Marvasti, 240 Conn. 549 (1997) (where the court upheld the trial court's striking of a single paragraph because the court construed it as setting forth a cause of action). "A motion to strike a single paragraph is technically improper when the paragraph does not purport to state a cause of action." Fromkinv. Brown, Superior Court, Judicial District of New Haven, Docket No. 334095 (March 3, 1994) (9 C.S.C.R. 329); Michaud v. St.Mary's Hospital, Superior Court, Judicial District of Waterbury, Docket No. 099015 (August 21, 1991) (6 C.S.C.R. 821) ("It is not proper to address a motion to strike to a single paragraph. . . .") "A demurrer will be sustained only when the pleading as a whole fails to state a cause of action or defense; no separate paragraph thereof is by itself demurrable." Fromkinv. Brown, supra.
The paragraphs defendant moves to strike are not separately, legally sufficient causes of action. No one paragraph states a cause of action separate from that set forth in the entire count. Within the sixteen paragraphs of count two, plaintiff alleges the elements of his claim as a subrogee injured as a result of indemnification of the Local for the defendant's malfeasance. Plaintiff alleges fraudulent conversion by defendant and that it has suffered damages. None of the relevant paragraphs taken alone constitutes a cause of action. Accordingly, defendant's motion to strike the individual paragraphs of count two is properly denied.
 IV.
Defendant moves to strike paragraphs 4, 5, 6, and 7 of the plaintiff's claims for damages. The relevant paragraphs claim: 4) exemplary damages; 5) treble damages pursuant to General Statutes § 52-564; 6) double damages pursuant to General Statutes § 52-565; and 7) attorney's fees. "The only pretrial method to attack a prayer for relief is a motion to strike." Interstate Aviation, Inc. v. Meriden, Superior Court, CT Page 13951 Judicial District of New Haven, Docket No. 240874 (April 27, 1994) ("If the relief sought does not correspond with the allegations in the complaint, [the prayer for relief] is demurrable.").
"Although some cases speak instead of exemplary damages [rather than punitive damages] . . . there can be little doubt that the two terms are merely alternate labels for the same remedy." Alaimo v. Royer, 188 Conn. 36, 42 (1982). "`To furnish a basis for recovery of [punitive] damages, the pleadings must allege . . . wanton or willful malicious misconduct, and the language contained in the pleadings must be sufficiently explicit to inform the court and opposing counsel that such damages are being sought. . . . A willful and malicious injury is one inflicted intentionally without just cause or excuse. . . .'"Coldwell Banker v. Ward, Superior Court, Judicial District of Waterbury, Docket No. 122435 (October 17, 1995) (15 Conn. L. Rptr. 273, 275), quoting Markey v. Santangelo, 195 Conn. 76, 77
(1985). "`Punitive damages . . . are awarded when the evidence shows a reckless indifference to the rights of others or an intentional and wanton violation of those rights.'" ChaspekManufacturing Corp. v. Tandet, Superior Court, Judicial District of Stamford/Norwalk Housing Session, Docket No. 092714 (June 16, 1996), quoting Collens v. New Canaan Water Co., 155 Conn. 477,489 (1967); see Siegrist v. Kowalczyk, Superior Court, Judicial District of Hartford-New Britain, Docket No. 705293 (January 2, 1996) aff'd, 44 Conn. App. 913 (1997). "Absent statutory or contractual authorization, attorney's fees are not recoverable. . . . An exception to this general rule, however, is that a court may award attorney's fees as a component of punitive damages . . ." Plikus v. Plikus, 26 Conn. App. 174, 179
(1991). "[W]here a tort is willful, wanton or malicious, the injured party may recover punitive damages which include attorney's fees." Boyles v. Preston, Superior Court, Judicial District of Tolland, Docket No. 058012 (January 17, 1997), citingMarkey v. Santagelo, supra. "`Punitive damages may be awarded upon a showing of fraud.'" Stewart v. Miller, Superior Court, Judicial District of Fairfield, Docket No. 317408 (February 15, 1996), quoting Plikus v. Plikus, 26 Conn. App., supra. "`[P]unitive or exemplary damages in a fraud case include attorney's fees.'" Stewart v. Miller, supra, Superior Court, Docket No. 317408, quoting Wedig v. Brinster, 1 Conn. App. 123,134, cert. denied, 192 Conn. 803, (1984); Plikus v. Plikus, 26 Conn. App., supra; Siegrist v. Kowalczyk, supra. "Allegations of misrepresentation sufficiently allow the plaintiff to seek CT Page 13952 punitive damages." Fishman v. L M Development. Inc., Superior Court, Judicial District of Litchfield, Docket No. 057205 (August 26, 1992). "In a conversion action, punitive damages may be awarded upon a showing of fraud." New England Slate v.Stankowski, Superior Court, Judicial District of Stamford/Norwalk, Docket No. 140796 (March 14, 1995), citingPlikus v. Plikus, supra.
In the present case, plaintiff asserts various claims, including fraud, conversion, misrepresentation, wrongful appropriation and breach of fiduciary duty. Exemplary damages and attorney's fees requested in paragraphs four and seven correspond to these allegations and, thus, are not subject to being stricken.[5]
Plaintiff's prayer for treble and double damages pursuant to General Statutes §§ 52-564 and 52-565 in paragraphs five and six of the claim for relief are founded on the allegations in the pleadings that defendant stole property of the insured by falsifying reimbursement documents. General Statutes §52-564 provides: "Treble damages for theft. Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages." General Statutes § 52-565 provides: "Double damages forforgery. Any person who falsely makes, alters, forges or counterfeits any document, or knowingly utters, as true, any document falsely made, altered, forged or counterfeited, shall pay double damages to any party injured thereby." Although paragraphs five and six of the prayer for relief correspond to the allegations contained in the complaint, it is the court's view that these paragraphs claiming statutory damages are nevertheless subject to being stricken because in a subrogation action the insurer/subrogee's recovery is predicated upon the amounts(s) paid its insured; recovery of sums double and/or treble the monetary losses actually incurred by the insurer and insured (in an action brought just by the insurer/subrogee) is, in my view, inconsistent with the purpose and concept of subrogation.[6]
For the reasons stated herein, defendant's motion to strike (#103) is Denied, except as to paragraphs five and six of the prayer for relief, which are hereby ordered stricken; and, plaintiff's objection (#111) thereto is sustained, except as to paragraphs five and six of the prayer for relief. CT Page 13953
Mulcahy, J.
[2] The motion to dismiss is the legal mechanism used to assert lack of jurisdiction over the subject matter. Practice Book Section 143; Sadloski v. Manchester, 235 Conn. 637, 645-46 n. 13 (1995). "A motion to dismiss . . . properly attacks the jurisdiction of the court. . . ." Gurliacci v. Mayer,218 Conn. 531, 544 (1991). "Jurisdiction of the subject-matter is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong." Figueroa v. C SBall Bearing, 237 Conn. infra at p. 4.
[3] In view of this court's conclusion that plaintiff insurer has standing to bring this action independent of the Local, defendant's argument that the Local is a necessary and indispensable party must also fail. It is noted that our Supreme Court, in the Westchester Fire case, observed that "[o]nce the insured has been paid . . . [there is] no incentive to bring an action against the party causing the loss." 236 Conn. at p. 373-74.
[4] The relevant paragraphs of count two are:
4. The defendant converted to his own use money and property of the Local.
8. The defendant's actions and misrepresentations enabled him to wrongfully convert the Local's property and money.
9. The actions of the defendant were part of a scheme to deprive the Local of the value of the property of the Local.
10. The defendant made no payment to the Local for the value of the property which he converted to his own use and gain, despite demand therefor.
13. As a result of the actions of the defendant, the plaintiff has CT Page 13954 incurred substantial attorney's fees and costs.
14. By reason of the foregoing, there is now due and owing from the defendant to the plaintiff the sums set forth above, together with attorney's fees and costs and statutory interest.
[5] Exemplary damages consist of reasonable expenses incurred in litigation, less taxable costs. Markey v. Santangelo, 195 Conn. supra at p. 80; L.F. Pace Sons, Inc. v. TravelersIndemnity Co., 9 Conn. App. 30, 48 (1986). Such damages may include the costs of bringing the action and attorney's fees; to be awarded, it is essential that evidence of the costs of the litigation be presented. Alaimo v. Royer, 188 Conn., supra at p. 42.
The court's ruling is merely that the claim for exemplary damages is legally consistent with plaintiff's allegations. For that reason, particularly given the narrow function of a motion to strike, the claim is not to be stricken. Where the pleading facially demonstrates a basis in law for recovery of expenses incurred incidental to the litigation, the issue of recoverability is appropriately addressed at trial.
[6] In Westchester, our Supreme Court, comparing the circumstances of that case with Berlinski v. Ouellette,164 Conn. 482 (1973) (which Westchester overruled), observed that in both cases, the subrogee/carrier was "stepping into the shoes of the party it paid in order to recover the payments it made, and thus..prevent [an] unjust enrichment of the party whose debt it paid." (Emphasis added). And, in Aetna Casualty S. Co. v.Associates Transports. Inc., 512 P.2d 137 (Okla. 1973), referred to and discussed in the Westchester case, the court repeatedly refers to the subrogee's right of recovery from the third party/tortfeasor "to the extent of the amount paid" its insured: "we hold plaintiff [insurer], upon paying the loss, became subrogated, to the extent of the amount paid, to the assured's right of action against the tortfeasor." (Emphasis added). Id. at p. 139.
Although the court has allowed the claim for exemplary damages (expenses of litigation) to stand, claims for sums double or treble amounts actually paid by the subrogee/insurer to the subrogor are not in consonance with the legal right of subrogation (right to recover "the payments it made"), particularly where the action is brought solely by the indemnitor company.
CT Page 13955