[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON SUBSTITUTE MOTION TO STRIKE
 I. Background
The Plaintiff James A. Kennedy has brought this action against the Defendants Collins Law Firm, P.C., Matthew J. Collins and William J. Collins. The Substitute Complaint, dated July 22, 1998 is in seven counts. The factual allegations underlying all counts are set forth in Paragraphs 1 through 23 of the First Count, which paragraphs are made the corresponding paragraphs of each succeeding count. These paragraphs in effect allege that the Defendants failed to comply with an assignment by their assignor client of a stated portion of that clients recovery from a personal injury action.
The Defendants first move to strike all counts on the ground that the alleged assignment provides an inadequate basis upon which to predicate the causes of action. This ground requires that motion initially be granted as to the First Count. In addition, assuming the Court does not strike the foundational First Count, the Defendants independently move to strike the Third, Fourth, Sixth and Seventh Counts.
A motion to strike is the proper vehicle to contest the legal sufficiency of the allegations of any complaint, counterclaim or cross-complaint, or of any prayer for relief therein. Practice Book § 10-39. A motion to strike admits all well pleaded allegations and those facts necessarily implied therefrom. Amodio v. Cunningham, 182 Conn. 80, 82-83
(1980). "If the facts provable under the allegations would support a defense or cause of action, the motion to strike must fail." Ferryman v. Groton, 212 Conn. 138, 142 (1989). Only the grounds specified in the motion may be considered. Meredith v.Police Commission, 182 Conn. 138, 140 (1980). Mere conclusions of law, absent supporting factual allegations, are insufficient.Cavallo v. Derby Savings Bank, 188 Conn. 281, 285-86 (1982).
As stated, the factual allegations of Paragraphs 1-23 are the foundational allegations for each count. Paragraph 24 of the First through Fourth Counts and the Sixth Count and Paragraphs 24 and 25 of the Fifth and Seventh Counts, state the particular cause of action claimed in that count.
The foundational paragraphs allege the following: that the Defendants' client, Athena Linda M. Palatsoukas ("Linda"), by writing dated October 26, 1993, assigned to the Plaintiff, her CT Page 3436 father, $38,400.00 out of the net proceeds, if any, of a then pending personal injury action brought by her against an unrelated third party; that on November 18, 1995, the Defendants, then Linda's sole counsel in that underlying action, received notice and a copy of the subject assignment; that on November 4, 1997, during a deposition of the Plaintiff in the course of the underlying action at which one or more of the individual Defendants were present, copies of the assignment and of Plaintiff's 1995 transmittal letter with the same to the Defendants were identified and marked as evidence; and that although at some point in 1998 the underlying action was settled and a cash settlement was paid over to and disbursed by the Defendants, no portion of these proceeds was paid to the Plaintiff.
A copy of the subject assignment is annexed to the respective memoranda of the parties. The assignment, bearing Linda's signature and that of two witnesses, as well as an acknowledgment, reads in its entirety as follows:
 ASSIGNMENT Know all men by these presents that, whereas, I, ATHENA LINDA M. KENNEDY PALATSOUKAS of 17 Stoneybrook Drive, Glastonbury, Connecticut, am desirous to convey to my father, JAMES A. KENNEDY of 257 Woodhaven Road, Glastonbury, Connecticut, the sum of $38,400.00 out of the net proceeds, if any, of any settlement or judgment arising out of a claim against a third party:
 Now, therefore, I, the said ATHENA LINDA M. KENNEDY PALATSOUKAS, in consideration of one dollar and other valuable consideration given to me by JAMES A. KENNEDY the receipt whereof is hereby acknowledged, do hereby assign to the aforementioned JAMES A. KENNEDY, the sum of $38,400.00 out of the net proceeds, if any, of any settlement or judgment in my favor arising out a claim against Sanyo North America Co. for injuries I suffered in a fire on April 1, 1991.
The counts in issue will be considered in order.
 II. First Count
The First Count alleges that the Defendants' refusal to turn CT Page 3437 over to the Plaintiff pursuant to the assignment the sum of $38,400.00 constitutes a conversion by the Defendants of "property of the plaintiff to the value of $38,400.00 or the net amount of the settlement, whichever is less."[1] The Defendants assert that the assignment is invalid because Connecticut law does not allow a personal injury cause of action to be assigned, citing Berlinski v. Ovellette, 164 Conn. 482,485-86 (1973).
Berlinski confirmed the applicability in Connecticut that, absent an authorizing statute, a personal injury claim cannot be assigned. Id. The purposes of this rule were, inter alia, to discourage "unscrupulous interlopers and litigious persons . . . from purchasing claims for pain and suffering and prosecuting them in court as assignees," and "that such an assignment directly or indirectly serves to prejudice the ultimate ability of the injured person to be compensated fully." Id., 486. Berlinski, however, recognized that the common law prohibition against assignment of a personal injury claim would not apply once the claim had been reduced to judgment. Ciulewiczv. Doyle, 172 Conn. 177, 180 (1976), citing Berlinski, supra,164 Conn. 485.[2]
The indicia of a prohibited assignment were enumerated inBerlinski. These included the right of the assignee to pursue the claim at its expense and by its own choice of counsel, as well as to recover and retain for itself damages for all of the assignor's personal injuries. Berlinski, supra, 164 Conn. 487. In essence, the pertinent factors involve the transfer to the assignee of the right to prosecute and control the action against he underlying tortfeasor, and to retain the recovery therein. Id., 490.
These factors are not present in this case. Nothing in the subject assignment purports directly or indirectly to afford the Plaintiff assignee any right to prosecute or control in any way the underlying personal injury claim, nor is any such factor alleged. The assignment is quite clear that it purports to assign to the Plaintiff only "the sum of $38,400.00 out of the net proceeds, if any" derived from the personal injury action. As noted in Berlinski, supra, 164 Conn. 489 "[t]here is, of course, a crucial distinction between an enforceable interest in the proceeds of an action and the right to maintain the action itself." CT Page 3438
This "crucial distinction" is here applicable. The assignment is limited to a stated amount of the net proceeds, if any, and on its face has nothing to do with the maintenance or control of the underlying action. Berlinski cites favorably rulings in other jurisdictions upholding similar assignments. Id., 489-90.
The motion to strike all counts on the issue raised concerning the validity of the assignment is denied.
 III. Third Count
The Third Count claims that the conduct of the Defendants alleged in the foundational paragraphs "constitutes willful and wanton misconduct, as a result of which the plaintiff was deprived of his property."
In practice, the terms willful, wanton or reckless conduct have been treated as meaning the same thing. Dubay v. Irish,207 Conn. 518, 533 (1988).
 The result is that "willful," "wanton," or "reckless" conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent. . . . It is at least clear . . . that such aggravated negligence must be more than and mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence, or simply inattention.
Id., 533, quoting W. Prosser W. Keaton, Torts (5th Ed.) § 34, p. 214. It is such conduct as indicates a reckless disregard of the rights or safety of others or of the consequences of the actions. Markey v. Santangelo, 195 Conn. 76, 78 (1985). "The mere use of the words `reckless' and `wanton' is insufficient to raise an actionable claim of reckless and wanton misconduct."Sheiman v. Lafayette Bank Trust Co., 4 Conn. App. 39, 46
(1985), citing Kostiuk v. Queally, 159 Conn. 91, 94 (1970).
The gravamen of the Plaintiff's action is simply that the Defendants failed to honor his assignment. The demands for payment alleged in Paragraphs 21-23 occurred after the funds had been disbursed. Paragraphs 11, 12 and 19. There is nothing alleged in the Third Count in support of the claim. In his opposition memorandum, pages 5-6, the Plaintiff acknowledges that he has no present knowledge of any facts supporting the CT Page 3439 bare claim of willful and wanton misconduct. As alleged, the claim is merely conclusory, and is thus insufficient. Cavallo v.Derby Savings Bank, supra, 188 Conn. 285-86.
The motion to strike is granted as to the Third Count.
 IV. Fourth Count
The Plaintiff concedes that the Fourth Count, sounding in "gross negligence" may be stricken, as Connecticut does not recognize such a basis of liability. See Decker v. Roberts,125 Conn. 150, 157 (1939).
The motion to strike is granted as to the Fourth Count.
 V. Sixth and Seventh Counts
The Sixth and Seventh Counts purport to allege violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. The Sixth Count claims a CUTPA violation by reason of the "defendants' failure to respect the plaintiff's demonstrated property right in the settlement". The Seventh Count claims a CUTPA violation by reason of the "defendants' breach of their fiduciary obligations to the plaintiff." No authority is cited by the Plaintiff in support of either of these propositions. The authority is to the contrary.
CUTPA has been held in general to apply to the conduct of attorneys. Heslin v. Connecticut Law Clinic of Trantolo Trantolo, 190 Conn. 510, 521 (1983). However, "only the entrepreneurial aspects of the practice of law are covered by CUTPA." Beverly Hills Concepts, Inc. v. Schatz Schatz,Ribicoff Kotkin, 247 Conn. 48, 79 (1998), quoting Haynes v.Yale-New Haven Hospital, 243 Conn. 17, 34 (1997).
There is nothing in the Substitute Complaint even remotely alleging that the Defendants were engaged in an entrepreneurial activity. At best, it alleges only that the Defendants were engaged in the legal representation of the assignor, Linda. This is insufficient. For this reason, the Sixth Count and in part the Seventh Count must fail.
The allegations of the Seventh Count are insufficient to allege a fiduciary relationship.[3] Such a relationship involves an attorney-client relationship, which this is not. CT Page 3440Beverly Hills Concepts, Inc., supra, 247 Conn. 56. In the absence of such a relationship, a fiduciary relationship may arise in those "situations in which there is a justifiable trust confided on one side and a resulting superiority and influence on the other." Dunham v. Dunham, 204 Conn. 303, 320 (1987).
 A fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interest of the other. . . . The superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him.
Albuquerque v. Alberquerque, 42 Conn. App. 284, 287 (1996), quoting Dunham v. Dunham, supra, 323.
While normally whether such a confidential relationship exists is a factual question for the trier of fact; Albuquerquev. Albuquerque, supra, 42 Conn. App. 287; the Plaintiff is limited to the allegations of his complaint; Robert S. Weiss Associates v. Wiederlight, 208 Conn. 525, 537 (1988). No such confidential relationship is alleged. Accordingly, the Seventh Count must fail for the same reason as the Sixth Count.
The motion to strike is granted as to the Sixth and Seventh Counts.
David L. Fineberg Superior Court Judge