**Sidney ZABELLE**

v.

**Sally A. CORATOLO.**

**Case No. B–90–CV–613 (JAC).**

United States District Court,
D. Connecticut.

Jan. 26, 1993.

Christopher J. Jarboe (Lovejoy, Hefferan, Rimer & Cuneo), Norwalk, CT, for plaintiff.

Karen L. Karpie (Murphy, Laccavole & Karpie), Bridgeport, CT, Denise A. Delsole (DelSole & DelSole), New Haven, CT, Dominick J. Rutigliano (Law Offices of Daniel J. Portanova), Bridgeport, CT, for defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, Chief Judge:

■ This is an action for vexatious suit under Conn.Gen.Stat. § 52–568. The court's jurisdiction is based on the parties' diversity of citizenship. *See* 28 U.S.C. § 1332(a)(1). The case is therefore governed by the substantive law of the state of Connecticut. *See Salve Regina College v. Russell*, 499 U.S. 225, ——, 111 S.Ct. 1217, 1218, 113 L.Ed.2d 190 (1991), citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *see also Continental Casualty Co. v. Pullman, Comley, Bradley & Reeves*, 929 F.2d 103, 105 (2d Cir.1991).

Pending before the court is the defendant's Motion for Summary Judgment (filed May 11, 1992).[1] The defendant seeks summary judgment on both counts of the Amended Complaint (filed June 4, 1991). In the first count, the plaintiff has asserted a vexatious-suit claim based on a breach-of-contract action brought by the defendant in state court against the plaintiff.[2] In the second count, the plaintiff has asserted a vexatious-suit claim based on a tortious-interference action brought by the defendant in state court against other parties, Benjamin and Marjorie Rowe, who purportedly assigned their cause of action to the plaintiff.[3]

### BACKGROUND

This action arises out of negotiations concerning the potential sale of certain real property at 104–106 East Avenue, Norwalk, Connecticut (the "Norwalk property") from the plaintiff to the defendant. The following facts have not been disputed:

On or about May 1, 1985, the plaintiff ("Zabelle") and the defendant ("Coratolo") signed a document entitled "Binder of Sale"

in connection with the contemplated sale of the Norwalk property from Zabelle to Coratolo.[4] The Binder of Sale, a one-page document, states that the price of the property in question was to be $550,000, with the sum of $44,000 "payable on signing superseding CONTRACT." This document also states in handwritten letters: "Occupancy and possession of second & third floor will be given the buyer at time of closing if possible. Subject to negotiating contract." Further, this document sets two deadlines: the "contract of sale" was to be signed on or before June 15, 1985, and the "closing of sale" was to be on or before August 15, 1985. Upon the signing of the Binder of Sale, Coratolo paid the sum of $5,500 to Zabelle.

The proposed sale of the Norwalk property from Zabelle to Coratolo was never consummated. After signing the Binder of Sale, Zabelle and Coratolo continued for a time to discuss the terms of the proposed sale, including issues relating to the continuing occupancy of two apartments on the Norwalk property by tenants of Zabelle. But the June 15 deadline for signing a contract of sale passed without the negotiation or execution of any such contract and without the payment of the $44,000 that was to have been made on the signing of the contract. On July 3, 1985, Zabelle and Coratolo met once again, in the company of their attorneys, for further discussion of the terms of the proposed sale. Zabelle and Coratolo then met with at least one of the tenants of the Norwalk property. Finally, at some point in July 1985, Zabelle told Coratolo in a telephone conversation: "The deal is off."

After the breakdown of negotiations between Coratolo and Zabelle, Coratolo attempted to reassert her claim to the Norwalk property. On July 22, 1985, Coratolo recorded the Binder of Sale on the Norwalk land records. At around the same time—the par-

---

1. Plaintiff Zabelle filed a memorandum in opposition to the defendant's motion for summary judgment on June 1, 1992. Oral argument on this motion was held on the record in open court on November 5, 1992. Following the oral argument, the parties submitted supplemental briefs. This motion became ripe for decision with the filing of the plaintiff's supplemental brief on November 30, 1992.

2. *See* Amended Complaint ¶¶ 2–34.

3. *See* Amended Complaint ¶¶ 35–66.

4. *See* Defendant's Memorandum in Support of Motion for Summary Judgment (filed May 11, 1992) ("Defendant's May 11 Memorandum"), Ex. A. A copy of the "Binder of Sale" is attached to this opinion as Appendix A.

ties do not agree on the exact date—Zabelle entered an agreement for the sale of the Norwalk property to Benjamin and Marjorie Rowe ("the Rowes"). Under the agreement, the Rowes were to pay a higher price than Coratolo would have been required to pay under the Binder of Sale. The sale from Zabelle to the Rowes was consummated on or about December 26, 1985.

On August 28, 1985, Coratolo commenced a lawsuit in Connecticut Superior Court against Zabelle seeking specific performance of the Binder of Sale.[5] On the same date, Coratolo recorded a notice of lis pendens on the Norwalk land records to indicate the pendency of her lawsuit against Zabelle. On September 30, 1985, Zabelle filed an application for discharge of the lis pendens on the ground that there was no probable cause to support Coratolo's claim. In an order dated January 31, 1986, Judge Thim of the Connecticut Superior Court denied Zabelle's application for discharge of the lis pendens. In the memorandum of decision issued with the order, the court stated: "the plaintiff [Coratolo] has presented sufficient credible evidence to establish probable cause to sustain the validity of her claim."[6]

On February 10, 1986, with her action against Zabelle still pending, Coratolo sued the Rowes for tortious interference with contractual relations.[7] Coratolo alleged that the Rowes had known of the Binder of Sale and of the lawsuit by Coratolo against Zabelle and had nevertheless chosen to purchase the Norwalk property in December 1985—which was after Zabelle had filed a motion to discharge the notice of lis pendens but before Judge Thim had issued a decision on that motion. The action against the Rowes was subsequently consolidated for trial purposes with the action against Zabelle.

After a hearing before an attorney trial referee, judgment was entered against Coratolo both in her breach-of-contract action against Zabelle and in her tortious-interference action against the Rowes. In ruling against Coratolo, the court held that the Binder of Sale did not constitute a binding contract for the sale of the Norwalk property to Coratolo.[8] Coratolo filed an appeal of the judgment to the Connecticut Appellate Court on July 1, 1988. The appeal was withdrawn on October 25, 1988, following a decision by the Appellate Court in a separate case that presented similar issues. See Fowler v. Weiss, 15 Conn.App. 690, 546 A.2d 321, certif. denied, 209 Conn. 814, 550 A.2d 1082 (1988).

On December 3, 1990, Zabelle filed a vexatious-suit claim against Coratolo in this court. Zabelle based his vexatious-suit claim on Coratolo's breach-of-contract action against him, and he sought damages for legal fees and other expenses that he incurred in defending the suit. On May 15, 1991, after entering an assignment agreement with the Rowes, Zabelle sought permission from this court to file an amended complaint setting forth a second count. The proposed second count asserted a vexatious-suit claim based on Coratolo's tortious-interference action against the Rowes. In this count, Zabelle sought damages both for the Rowes' legal fees and for their "embarrassment, humiliation, loss of time, inconvenience, and annoyance."[9] In response to Coratolo's objection, Zabelle subsequently submitted a revised proposed second count under which he sought damages only for the Rowes' legal fees. The court granted the motion to file the revised proposed second count on June 20, 1991.

---

5. *Coratolo v. Zabelle*, Civil Action Number CV–85–0078179S, Connecticut Superior Court, Judicial District of Stamford (filed August 28, 1985).

6. *See* Defendant's May 11 Memorandum, Ex. D., Memorandum of Decision Re: Lis Pendens (filed January 3, 1986), at 3.

7. *Coratolo v. Rowe*, Number CV–86–0080727S, Connecticut Superior Court, Judicial District of New Haven (filed February 10, 1986).

8. *See* Amended Complaint, Ex. B, Memorandum of Decision of Attorney Trial Referee John Keogh, Jr. (Jan. 4, 1988) (entered as final judgment by Emmett, J., on May 31, 1988).

9. *See* Proposed Amended Complaint (dated May 15, 1991) (filed June 21, 1991) ¶¶ 66.

DISCUSSION

■ This action involves two claims for vexatious suit. Under Connecticut law, the essential elements of a vexatious-suit claim are (1) termination of the underlying action in favor of the defendant therein; (2) malice on the part of the party that brought the underlying action; and (3) lack of probable cause for the underlying action. *See* Conn. Gen.Stat. § 52–568; *see also DeLaurentis v. City of New Haven,* 220 Conn. 225, 248, 597 A.2d 807 (1991). Consequently, the existence of probable cause for bringing the underlying suit provides a complete defense to a vexatious-suit claim. *See Vandersluis v. Weil,* 176 Conn. 353, 356, 407 A.2d 982 (1978); *see also Brodbrib v. Doberstein,* 107 Conn. 294, 296, 140 A. 483 (1928). Probable cause for bringing suit exists where the plaintiff has " 'a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it.' " *DeLaurentis,* 220 Conn. at 256, 597 A.2d 807.

The defendant's motion for summary judgment addresses both of the plaintiff's vexatious-suit claims. With respect to the first claim, which is based on the defendant's breach-of-contract action, the defendant argues that she is entitled to judgment as a matter of law because a state court has found that the breach-of-contract action was brought with probable cause. With respect to the second claim, which is based on the defendant's tortious-interference action, the defendant argues that (1) the assignment of the cause of action from the Rowes to Zabelle is not valid, (2) even if the assignment is valid, the state court's finding of probable cause for the breach-of-contract action should be given preclusive effect with respect to the tortious-interference action; and (3) even if the state court's finding of probable cause is not given preclusive effect, this court should find that probable cause did exist for the tortious-interference action.

The defendant is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). While the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986) (Feinberg, C.J.), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The non-moving party may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Finally, " 'mere conclusory allegations or denials' " in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist. *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980) (quoting *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978)).

I

The first issue to be addressed concerns the breach-of-contract action that Coratolo brought in state court against Zabelle. In his Amended Complaint, Zabelle asserts that the breach-of-contract action constituted a vexatious suit under Conn.Gen.Stat. § 52–568. Coratolo now asks the court to grant summary judgment against Zabelle on this vexatious-suit claim. In support of her motion, Coratolo argues that this court should give preclusive effect to the state court's finding that there was probable cause for the

breach-of-contract action.[10] Because a finding of probable cause constitutes a complete defense to a vexatious suit-claim, a decision to give preclusive effect to the state court's decision would entitle the defendant to summary judgment on this claim. Zabelle argues, in response, that the state court decision on probable cause should not be given preclusive effect.[11]

■ The doctrine of collateral estoppel prohibits the relitigation of an issue that was actually litigated and necessarily determined in a prior action. *See Aetna Casualty & Surety Co. v. Jones*, 220 Conn. 285, 297, 596 A.2d 414 (1991); *see also Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). For a decision in a prior action to have preclusive effect, the issue in the subsequent action must be identical to the issue decided in the earlier proceeding. *See Aetna Casualty & Surety*, 220 Conn. at 297, 596 A.2d 414. The doctrine of collateral estoppel is based on the public policy that "a party should not be able to relitigate a matter which it already has had an opportunity to litigate." *In re Juvenile Appeal (83–DE)*, 190 Conn. 310, 318, 460 A.2d 1277 (1983).

■ The decision alleged to have preclusive effect in this case is the order of the Connecticut Superior Court denying Zabelle's motion to discharge the notice of lis pendens on the Norwalk property.[12] After an evidentiary hearing on Zabelle's motion, the state court issued a memorandum of decision in which it stated that "the plaintiff has presented sufficient credible evidence to establish probable cause to sustain the validity of her claim."[13] This decision is considered a final judgment for purposes of appeal in Connecticut. *See* Conn.Gen.Stat. § 52–325(c)a (providing that any order granting or denying an application to discharge a notice of lis pendens shall be deemed a final judgment for purposes of appeal).

The standard for determining whether the Superior Court's decision is a final judgment for purposes of collateral estoppel is defined in Connecticut by the Restatement (Second) of Judgments. *See State v. Aillon*, 189 Conn. 416, 425, 456 A.2d 279 (1983), *cert. denied*, 464 U.S. 837, 104 S.Ct. 124, 78 L.Ed.2d 122 (1983). Section 13 of the Restatement provides that " 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." In adopting the Restatement rule, the Connecticut Supreme Court has stated that "[a] judgment may be final in a res judicata sense as to a part of an action although litigation continues as to the rest." *Aillon*, 189 Conn. at 425, 456 A.2d at 284.

In the circumstances presented here, it is clear that the finding of probable cause by the state court should be deemed a final judgment for purposes of collateral estoppel. First, Zabelle had an opportunity to litigate the issue of probable cause in an evidentiary hearing—not merely at oral argument. Second, Zabelle himself initiated the hearing on probable cause by bringing his application for discharge of the notice of lis pendens. He therefore cannot argue that he did not wish to litigate the issue or that he was unprepared to do so. Third, Zabelle never renewed his application based on new evidence, nor did he exercise his right to appeal the decision denying his application. This is particularly important in light of the Connecticut Supreme Court's holding that the availability of appellate review is a "significant" factor in determining whether a decision should be given collateral estoppel effect. *See Convalescent Center of Bloomfield, Inc. v. Department of Income Maintenance*, 208 Conn. 187, 201, 544 A.2d 604 (1988).

For these reasons, the decision of the Connecticut Superior Court finding probable cause for Coratolo's breach-of-contract action

---

**10.** *See* Defendant's May 11 Memorandum at 14–21.

**11.** *See* Plaintiff's Memorandum in Opposition to Motion for Summary Judgment (filed June 1, 1991) ("Plaintiff's June 1 Memorandum") at 7–18.

**12.** The decision alleged to have preclusive effect related solely to Coratolo's breach-of-contract claim against Zabelle—*not* to her claim against the Rowes for tortious interference with contractual relations.

**13.** *See* Defendant's May 11 Memorandum, Ex. D, at 3.

against Zabelle must be given preclusive effect in this case. Accordingly, the defendant's motion for summary judgment must be granted with respect to the vexatious-suit claim asserted by Zabelle on his own behalf.

## II

The three issues that remain to be addressed concern the tortious-interference action that Coratolo brought in state court against the Rowes. In his Amended Complaint, Zabelle asserts that the tortious-interference action constituted a vexatious suit under Conn.Gen.Stat. § 52–568. Coratolo now asks the court to grant summary judgment against Zabelle on this vexatious-suit claim. In support of her motion, Coratolo argues that (1) the assignment of the tortious-interference action from the Rowes to Coratolo was not valid; (2) even if the assignment is valid, the state court's finding of probable cause for the breach-of-contract action should be given preclusive effect with respect to the tortious-interference action; and (3) even if the state court's finding of probable cause is not given preclusive effect, this court should find that probable cause did exist for the tortious-interference action.

### A

At the threshold, the court must determine whether the assignment agreement between Zabelle and the Rowes was valid. Coratolo challenges the assignment on the ground that Connecticut law prohibits the assignment of a cause of action for personal injuries.[14] Zabelle argues that the rule prohibiting assignment of such claims is inapplicable here because he seeks damages only for the Rowes' legal fees.[15]

 Connecticut law prohibits assignment of claims for personal injuries but does not prohibit assignment of claims for injuries to property. The Connecticut Supreme Court has stated that " '[a]n assignment of a claim against a third person or a bargain to assign such a claim is illegal and ineffective if the claim is for ... damages for an injury the gist of which is to the person rather than to the property....' " *Berlinski v. Ovellette,* 164 Conn. 482, 485, 325 A.2d 239, 242 (1973); *see also Iseli Co. v. Connecticut Light & Power Co.,* 211 Conn. 133, 136–137, 558 A.2d 966 (1989). The purpose of the rule against transfer of personal injury claims was to prevent "unscrupulous interlopers and litigious persons" from "purchasing claims for pain and suffering and prosecuting them in court as assignees." *Berlinski,* 164 Conn. at 486, 325 A.2d at 242. Consequently, the rule prohibiting assignment of personal injury claims would have prohibited Zabelle from seeking damages based on the "embarrassment, humiliation, loss of time, inconvenience, and annoyance" allegedly suffered by the Rowes.[16] But, particularly where a suit arises out of business dealings, the costs of defending the suit are properly characterized as costs of doing business. For this reason, the rule against assignment of personal injury claims does not invalidate the assignment to Zabelle of the Rowes' claims for legal fees. In the absence of any other challenge to the assignment agreement, the court must find the agreement to be valid and effective.

### B

The next issue to be addressed is whether collateral estoppel requires this court to find that Coratolo had probable cause for her tortious-interference action against the Rowes. Coratolo argues that the state court's finding of probable cause for the breach-of-contract action against Zabelle should be given preclusive effect, thereby compelling this court to conclude that there was probable cause for the tortious-interference action against the Rowes.[17] Zabelle argues that the state court's decision cannot have preclusive effect because the state court addressed only the breach-of-contract action,

14. *See* Defendant's May 11 Memorandum at 32.

15. *See* Plaintiff's June 1 Memorandum at 30–35.

16. *See* note 9 and accompanying text *supra.*

17. *See* Defendant's Supplemental Memorandum (filed November 17, 1992) ("Defendant's November 17 Memorandum") at 5–7.

not the tortious-interference action.[18]

■ The doctrine of collateral estoppel provides that a prior decision can have preclusive effect in a subsequent case only if the latter case involves the same issue. *See Aetna Casualty & Surety,* 220 Conn. at 297, 596 A.2d at 421 (holding that "the issue concerning which relitigation is sought to be estopped must be identical to the issue decided in the prior proceeding"). Because the "same issue" requirement is not satisfied in the circumstances presented here, the prior decision of the state court does not have preclusive effect. The state court only addressed the issue of whether there was probable cause for a breach-of-contract action. The issue presented in the instant case is whether there was probable cause for a tortious-interference action. The latter issue is different because a tortious-interference claim requires proof of an element that is not part of a breach-of-contract claim: a tortious-interference claim requires proof that the defendant acted with improper motive or means. *See Blake v. Levy,* 191 Conn. 257, 260, 464 A.2d 52 (1983); *see also Kecko Piping Co. v. Monroe,* 172 Conn. 197, 201–02, 374 A.2d 179 (1977). Consequently, the state court's decision does not have preclusive effect with respect to the issue of whether Coratolo had probable cause for her tortious-interference action against the Rowes.

## C

The final issue to be considered is whether Zabelle has raised a genuine issue of material fact with respect to his claim that Coratolo brought her tortious-interference action without probable cause. This issue has been thoroughly briefed by the parties, at the request of the court, in supplemental memoranda filed after the hearing in this matter on November 5, 1992.[19]

■ Probable cause for bringing suit exists where the plaintiff has " 'a bona fide belief in the existence of the facts essential under the law for the action.' " *DeLaurentis,* 220 Conn. at 256, 597 A.2d at 823. A claim for tortious interference with contractual relations requires the plaintiff to establish (1) that there is a contractual or beneficial relationship between the plaintiff and a third party; (2) that the defendant, knowing of that relationship, sought to interfere with it; (3) that the defendant's alleged interference caused the plaintiff to suffer an actual loss; and (4) that the defendant's alleged interference was tortious. *See Weiss v. Wiederlight,* 208 Conn. 525, 535, 546 A.2d 216 (1988); *see also Solomon v. Aberman,* 196 Conn. 359, 364, 493 A.2d 193 (1985). Consequently, Coratolo had probable cause for her claim against the Rowes if she had a bona fide belief in the existence of the following facts: (1) that a contract existed between Coratolo and Zabelle, (2) that the Rowes knew of the contract, (3) that the Rowes intentionally procured the breach of that contract, and (4) that the Rowes did so without just cause.

Summary judgment is appropriate when the moving party establishes that there is no genuine issue of material fact for trial. *See Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552. Under this standard, Coratolo is entitled to summary judgment if there is no genuine dispute that she had a bona fide belief in the existence of facts sufficient to support her tortious interference· claim. While there are many factual disputes in this case, it has not been disputed that, at the time Coratolo brought suit against the Rowes, (1) Coratolo knew the state court had found that probable cause existed for her breach of contract action, thus giving her reason to believe that the Binder of Sale constituted a contract with Zabelle; (2) Coratolo knew or had reason to believe, based on her dealings with Zabelle, that the Rowes knew of the alleged Binder of Sale; (3) Coratolo knew that the Rowes had gone ahead with the purchase of the Norwalk property despite their knowledge of the Binder of Sale, thus giving her reason to believe that the Rowes had intentionally induced the alleged breach of contract; and (4) Coratolo knew of no facts indicating that the Rowes

---

18. *See* Plaintiff's Supplemental Memorandum (filed November 30, 1992) ("Plaintiff's November 30 Memorandum") at 6–10.

19. *See* Defendant's November 17 Memorandum at 1–5; Plaintiff's November 30 Memorandum at 1–6.

had just cause for the alleged inducement of the breach.[20]

These facts, if proven, might not be sufficient to support judgment in favor of Coratolo on the tortious-interference claim; indeed, Coratolo did not prevail on that claim in state court.[21] But knowledge of these facts was sufficient to justify a reasonable person in the belief that grounds existed for the tortious-interference claim. Consequently, Coratolo has established as a matter of law that her suit against the Rowes was brought with probable cause. Because probable cause constitutes a complete defense to a vexatious-suit claim, summary judgment must be entered for the defendant on the plaintiff's second count.

## CONCLUSION

For the reasons stated above, the defendant's Motion for Summary Judgment (filed May 11, 1992) (doc. # 45) is hereby GRANTED in its entirety.

It is so ordered.

---

**20.** The plaintiff has raised eight issues of disputed fact, none of which constitutes a genuine issue of material fact. It bears noting that not one of the purported issues of disputed fact concerns, even indirectly, Coratolo's knowledge of the Rowes' role in the breakdown of the negotiations between Coratolo and Zabelle. *See* Plaintiff's Local Rule 9(c)(2) Counter–Statement of Material Facts (filed June 1, 1992).

**21.** *See* note 8 and accompanying text *supra*.