**George L. KREGOS, d.b.a. American Sports Wire**

v.

**The LATEST LINE, INC., Susan McCarthy, Jolene McCarthy and Tribune Media Services.**

**Civ. No. 5–92–cv–398 (WWE).**

United States District Court, D. Connecticut.

March 22, 1996.

---

Mark P. Stone, Stamford, CT, for George L. Kregos.

Joseph A. Aceto, Aceto & Wells, Hamden, CT, for Latest Line, Inc., Susan McCarthy, Jolene McCarthy.

Jacob D. Zeldes, Adele V. Patterson, Robert A. Harris, Zeldes, Needle & Cooper, Bridgeport, CT, for Tribune Media Services.

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

EGINTON, Senior District Judge.

Plaintiff, George L. Kregos, d.b.a. American Sports Wire, commenced this action against defendants The Latest Line, Inc. ("LLI"), Susan McCarthy, Jolene McCarthy, and Tribune Media Services ("TMS") seeking injunctive relief, and compensatory and punitive damages. Plaintiff claims that LLI breached its contract with plaintiff due to TMS' tortious interference. Plaintiff also contends that Susan and Jolene McCarthy, the sole officers, directors and shareholders of LLI, are personally liable for LLI's breach.

Pending before the Court is Susan and Jolene McCarthys' motion for summary judgment and TMS' motion for summary judgment. For the following reasons, the McCarthys' motion will be denied and TMS' motion will be granted.

### Background

Unless otherwise indicated, the following material facts are undisputed. TMS is the syndicator of a daily newspaper feature column called "The Latest Line" which predicts the outcome of sporting events. The feature was created by James McCarthy and produced by him until his death in 1981. After his death, his widow, Susan McCarthy and his daughter, Jolene McCarthy, formed LLI for the sole purpose of continuing the column. Susan McCarthy is President and Jo-

lene is Secretary. The place of business maintained by LLI is the residence of Susan McCarthy and the former residence of Jolene McCarthy.

In November 1981, Susan McCarthy, as President of LLI, executed a written syndication agreement ("Syndication Agreement") with TMS' predecessor in interest, Chicago Tribune–New York News Syndicate, Inc. Paragraphs 1 and 10 of the Syndication Agreement provide in relevant part:

1. *The Feature.*

During each week of the term of this Agreement, [LLI] agrees to prepare and to furnish to [TMS] a column predicting the outcome of sporting events ("the Feature").

10. *Warranty.*

[LLI] represents and warrants that [LLI] has the full power and authority to enter into and perform this Agreement, that there is no contract, agreement or understanding with any other person, firm or corporation which would interfere with the obligations assumed by [LLI] hereunder, and that the Feature and all materials furnished to [TMS] hereunder will be new, original and unpublished.

Since neither Susan nor Jolene McCarthy had the requisite knowledge to write the column, LLI hired several people to produce the column on an interim basis. In May 1982, Susan McCarthy, as President of LLI, signed a contract with plaintiff to provide material for publication of The Latest Line. The Agreement provides in relevant part:

In accordance with [LLI's] agreement with the Chicago–Tribune News Syndicate[,] [plaintiff] agrees to comply with that portion of the warranty provision (section # 10) which relates to the definition of the Feature (section # 1)," ... a column predicting the outcome of sporting events ("The Feature')". [Plaintiff] agrees that the rationale he provides [LLI] in support of selections, (predictions against "the spread"), will be exclusive to [LLI] and will be new, original and unpublished.

In November 1991, Michael Agirion, Vice President and Editor of TMS, informed Jolene McCarthy of TMS' belief that plaintiff

was producing material identical to The Latest Line and selling it under other names. Agirion informed Jolene McCarthy that TMS would need assurances from LLI that TMS was receiving an exclusive product pursuant to the Syndication Agreement.

After not receiving those assurances, Agirion, by letter dated December 13, 1991, notified Jolene McCarthy that TMS would cancel the Syndication Agreement in 30 days. TMS thereafter agreed to suspend this cancellation notice to provide Jolene McCarthy time to approach plaintiff with this issue. By letter dated February 25, 1992, Agirion notified Jolene McCarthy that TMS would terminate the Syndication Agreement effective March 8, 1992. TMS thereafter agreed to another suspension of the cancellation notice pending discussions between LLI and plaintiff.

In June 1992, LLI terminated plaintiff's contract for the reason that plaintiff was not providing exclusive information and was in breach of contract. While employed, plaintiff was paid on checks drawn from LLI's bank accounts and all IRS forms 1099 pertaining to payments made to plaintiff were filed by LLI. LLI thereafter hired Benjamin Lee Eckstein to replace plaintiff.

### Discussion

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. *American International Group, Inc. v. London American International Corp.,* 664 F.2d 348, 351 (2d Cir.1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979,

982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

If the moving party meets its burden to show no genuine issue for trial, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading, but [its] response ... must set forth specific facts showing that there is a genuine issue for trial." If the nonmoving party "does not so respond, summary judgment, if appropriate, shall be entered against the [nonmoving] party." Fed.R.Civ.P. 56(e).

### The McCarthys' Motion for Summary Judgment

Defendants Susan and Jolene McCarthy move for summary judgment arguing that no genuine issues of material fact exist and as a matter of law plaintiff cannot pierce the corporate veil finding them personally liable for the acts of LLI.

"Courts will disregard the fiction of [a] separate legal entity when a corporation 'is a mere instrumentality or agent of another corporation or individual owning all or most of its stock.'" *Zaist v. Olson,* 154 Conn. 563, 573, 227 A.2d 552 (1967) (quoting *Hoffman Wall Paper Co. v. Hartford,* 114 Conn. 531, 535, 159 A. 346 (1932)). The issue of piercing the corporate veil is equitable in nature and rests on the facts of each case. *Angelo Tomasso, Inc. v. Armor Constr. & Paving, Inc.,* 187 Conn. 544, 555, 561, 447 A.2d 406 (1982). Given these well-recognized principles, "the issue of corporate disregard is generally submitted to the jury" thus creating a presumption against granting summary judgment. *David v. Glemby Co., Inc.,* 717 F.Supp. 162, 166 (S.D.N.Y.1989) (quoting *American Protein Corp. v. AB Volvo,* 844 F.2d 56, 59 (2d Cir.1988), *cert. denied,* 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988)).

In Connecticut, the corporate entity may be disregarded under either the instrumentality rule or the identity rule. *Angelo Tomasso, Inc. v. Armor Constr. & Paving, Inc.,* 187 Conn. at 553, 447 A.2d 406.

To satisfy the instrumentality rule, plaintiff must prove the following three elements:

(1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; 2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights; and 3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained. *Zaist v. Olson,* 154 Conn. at 575, 227 A.2d 552.

The McCarthys essentially argue that although they controlled the ordinary administration of LLI, plaintiff completely controlled the business practices and policies regarding the daily production of The Latest Line, demonstrating the separate mind and existence of LLI. In support, the McCarthys submit the affidavit of Jolene McCarthy which states that plaintiff "[c]ompletely controlled the production of the [The Latest Line], from inception, to creation to transmission to TMS." The affidavit further states that neither Jolene nor Susan McCarthy had more than a passing involvement with the daily production of The Latest Line.

While plaintiff does not controvert the McCarthys' evidence, the Court does not agree that the "transaction attacked" in this case pertains solely to the issue of plaintiff's daily production of The Latest Line. Plaintiff is attacking LLI's termination of its contract with plaintiff. Defendants McCarthy have not addressed this issue and accordingly have failed to demonstrate that no genuine issues of material fact exist as to whether LLI had a separate identity from the McCarthys regarding plaintiff's termination.

■ Despite these questions of fact, however, plaintiff does not allege or submit any evidentiary basis for concluding that the McCarthys used any control over LLI for fraudulent purposes, to perpetrate any wrongdoing or avoid a positive legal duty. Even if plaintiff is successful on his claim that LLI breached its contract with him,

breach of a corporate contract alone does not satisfy the second prong of the instrumentality rule. "In the absence of a claim that the corporation was formed for an improper purpose, or that the plaintiff[ ] w[as] improperly induced to enter into a contract with the corporation, the mere breach of a corporate contract cannot of itself establish the basis for application of the instrumentality rule." *Campisano v. Nardi,* 212 Conn. 282, 294, 562 A.2d 1 (1989). Thus, the instrumentality rule is inapplicable.

■ The Court finds, however, that genuine issues of material fact exist as to the whether the identity rule is satisfied. The identity rule applies "when the plaintiff shows 'such a unity of interest and ownership that the independence of the corporation had in effect ceased or had never begun, [and that] an adherence to the fiction of separate identity would serve only to defeat justice and equity....'" *United Electrical Contractors, Inc. v. Progress Builders, Inc.,* 26 Conn.App. 749, 755, 603 A.2d 1190 (1992) (quoting *Falcone v. Night Watchman, Inc.,* 11 Conn.App. 218, 221, 526 A.2d 550 (1987)). The identity rule is usually applied in situations where two corporate entities are controlled as one enterprise because of the existence of common shareholders, directors and officers and the lack of observance of corporate formalities. *Angelo Tomasso, Inc. v. Armor Constr. & Paving, Inc.,* 187 Conn. at 560, 447 A.2d 406. This rule, however, has also been applied to find individual stockholders liable. *See, e.g., Zaist v. Olson,* 154 Conn. 563, 227 A.2d 552 (1967); *Saphir v. Neustadt,* 177 Conn. 191, 413 A.2d 843 (1979).

In addition, genuine issues of material fact exist regarding the question of unity of interest between the McCarthys and LLI. Although the parties do not dispute that plaintiff was paid by checks drawn from LLI's bank accounts and that all IRS forms 1099 pertaining to payments made to plaintiff were filed by LLI, plaintiff avers that the McCarthys' Answers to plaintiff's Requests for Admissions essentially state that LLI does not pay rent for use of the residence but pays only a portion of the expenses incurred

at the residence, homeowners insurance, utilities, telephone and water.

In conclusion, viewing the facts in the light most favorable to plaintiff, summary judgment in favor of the McCarthys is inappropriate.

## TMS' Motion For Summary Judgment

Plaintiff alleges that defendant TMS tortiously interfered with plaintiff's contract with LLI causing LLI to breach the contract resulting in harm to plaintiff. TMS contests these allegations and moves for summary judgment. TMS argues that no genuine issues of material fact exist because the record is devoid of any evidence supporting plaintiff's claim of tortious interference.

A claim for tortious interference with contractual relations requires the plaintiff to establish (1) that there is a contractual or beneficial relationship between the plaintiff and a third party; (2) that the defendant, knowing of that relationship, sought to interfere with it; (3) that the defendant's alleged interference caused the plaintiff to suffer an actual loss; and (4) that the defendant's alleged interference was tortious.

*Zabelle v. Coratolo,* 816 F.Supp. 115, 122 (D.Conn.1993).

■ Not every act disturbing a contract or business expectancy is actionable. *Kakadelis v. DeFabritis,* 191 Conn. 276, 279, 464 A.2d 57 (1983). A plaintiff alleging tortious interference with contract is required to plead and eventually prove some improper motive or means by the defendant. *Rotophone, Inc. v. Danbury Hospital,* 13 Conn.App. 230, 235, 535 A.2d 830 (1988). "This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation ... or that defendant acted maliciously." *Blake v. Levy,* 191 Conn. 257, 261, 464 A.2d 52 (1983).

■ The parties do not dispute that a contract existed between plaintiff and LLI to produce the column. TMS argues that there is no evidence that TMS induced LLI to terminate plaintiff or that TMS acted with any improper motive or means regarding this contract. In support, TMS refers the Court to the portion of plaintiff's deposition where

he states that he has "no idea what would motivate TMS" to terminate him. TMS has also attached to its motion a portion of Jolene McCarthy's deposition which states that she never discussed plaintiff's termination with Agirion from TMS. She testified that:

I didn't discuss the nature of my business arrangement with Mr. Kregos with Mr. Argirion, he was just interested in the product, he wasn't interested in my personal dealings or private business,[ ] he was just concerned about the product that I was providing and he wanted to know the source of the product and he wanted assurances that that product was exclusive.

■ In his Statement of Facts in Dispute, plaintiff claims that "[TMS] acted in bad faith and with improper motive in exerting undue financial influence on the Latest Line, In[c]. to wrongfully terminate [p]laintiff's contract." Plaintiff, however, offers no support for this proposition. " 'Mere conclusory allegations or denials' in legal memoranda ... are not evidence and cannot by themselves create a genuine issue of material fact" dictating a trial. *Golino v. City of New Haven,* 761 F.Supp. 962, 965 (D.Conn.1991), *aff'd,* 950 F.2d 864 (2d Cir.1991) (quoting *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980)).

Plaintiff also states that TMS acted in bad faith by not requiring LLI to terminate plaintiff's replacement, Benjamin Lee Eckstein, who plaintiff alleges is a partner at a competing corporation known as "America's Line." This claim also fails to raise an issue of fact regarding an improper motive or means on the part of TMS. First, plaintiff does not present evidence that Eckstein provides material to competitors of LLI. Second, Eckstein was hired after plaintiff was terminated. There is no evidence from which a jury could reasonably conclude that TMS improperly induced LLI to terminate plaintiff in order to hire Eckstein.

Finally, plaintiff does not controvert Jolene McCarthy's deposition testimony submitted by TMS or proffer any evidence attacking her credibility. Plaintiff states that genuine issues of material fact exist regarding Agirion's credibility only. However, TMS' mo-

**606**

tion for summary judgment is not predicated on statements by Argirion but upon the deposition testimony of Jolene McCarthy. Accordingly, summary judgment in favor of TMS is appropriate.

### Conclusion

In light of the foregoing, the McCarthys' motion for summary judgment [# 63] is DENIED and TMS' motion for summary judgment [# 67] is GRANTED.